RICHARD E. MOUNT, Jr., Executor, &c., Respondent, *v.* JOHN MITCHELL and ABRAHAM CUMMINGS, Appellants.

Where an executor is cited before a surrogate to show cause why an execution should not issue against the estate of his testator, and, after a full hearing, the surrogate makes an order granting leave to issue such execution, no appeal lies from such order.

*It seems,* that the making of such order is in the discretion of the surrogate.

APPEAL from the judgment of the Supreme Court, first district, which reversed an order of the surrogate of the city of New York. In July, 1863, the appellants recovered a judgment against the respondent Mount, in the Court of Common Pleas of the city of New York, for $1,261.76. Mount was sole acting executor of William B. Moffat, late of the city of New York, who died in April, 1862. Letters testamentary were issued to Mount 7th May, 1862. In September, 1863, Mitchell, one of the appellants, applied to the surrogate of New York for a citation to be issued to Mount as such executor, to show cause why an execution should not issue against him as such executor for the collection of said judgment. The citation was issued; Mount appeared and accounted for the amount of the estate, by showing that about $11,000 had come to his hands as the avails of personal estate; that an amount of personal property, amounting to $27,715.17, was not yet available by reason of its being under a lease; that the debts of the testator unsecured by mortgage, or other lien, including interest thereon, was about $42,000; that there was a large real estate worth, over incumbrances, above $150,000, from sales of portions of which above $60,000 had been realized, &c. Thereupon the surrogate made an order granting leave to Mitchell and Cummings to issue execution in due form of law against said Mount, as executor, for the amount of said judgment and interest. Mount appealed from this order to the General Term of the Supreme Court, giving an undertaking in the sum of $100 on such appeal. The General Term reversed

the order of the surrogate with costs, from which judgment an appeal is brought to this court.

*Wm. R. Stafford*, for the appellants.

*G. Tillotson*, for the respondent.

POTTER, J.   1. It is so entirely clear that the General Term had no jurisdiction of the appeal in this case, that it requires nothing further to be said than to read the provision of the statute, made for such purpose, to wit: " Every such order shall be *conclusive* evidence that there are sufficient assets in the hands of such executor or administrator to satisfy the amount for which the execution is directed to be levied; and no appeal shall be made from any such order unless the person making the same shall execute to the plaintiff in such execution a bond with sufficient sureties, to be approved by the surrogate, *conditioned for the payment of the full amount so directed to be levied, with interest thereon and the costs of defending the appeal*, in case the order appealed from shall be affirmed." ( 2 R. S., 116; 3 id., 5th ed., p. 204, § 22 [21]. ) The bond in this case was in the penalty of $100, conditioned " to pay the costs that may be adjudged against him in the Supreme Court." The amount of the execution directed to be levied was $1,261.76. I am not aware of any repeal or modification of this statute, or of any of its provisions in this respect; none was claimed on the argument, or referred to on the briefs. The provisions of this statute are plain and clear. It is not allowable to interpret what has no need of interpretation. Courts possess no power in such a case to give construction, but are to adopt its terms; it speaks its own unambiguous, emphatic, unmistakable language, plain to the comprehension of every ordinary mind. This statute is not unconstitutional; its authority is above the power of courts, and is to be obeyed. When a statute is conceived in clear and precise terms; when the sense is manifest, and leads to nothing absurd, there can be no reason to refuse the sense which it naturally presents. To go elsewhere in search of conjectures, in order to restrain or extinguish it, is to endeavor

to elude it. (Vattel, b. 2, ch. 17, § 263.) The section of the statute above quoted was enacted with especial reference to just such a case as that before us. The first division of the section clearly intends to exclude from review, by another court, the question of discretion given to the surrogate in deciding as to the sufficiency of assets. It declares his order shall be *conclusive* upon that point. No appeal, therefore, can be brought to correct or reverse such a decision. If for any *other* reason than that of the sufficiency of assets, the surrogate has committed an error, then the second part or division of the section applies; that declares that no appeal shall be made for *any purpose*, except upon condition of giving a bond in the form, and containing the prescribed amount of security specified. The last division of the section is not to be construed as authorizing an appeal in relation to the question of discretion upon the question of sufficiency of assets. It must be some other question than that for which an appeal lies. The argument in this case, as well as the opinion of the General Term, show, that the only error complained of is that the surrogate erroneously decided in relation to the sufficiency of assets. This reversal by the Supreme Court was error. They had no jurisdiction of the appeal upon that question. If we could be wrong in this view, the question of the sufficiency of the bond is fatal to the appeal. The condition upon which, only, an appeal can be taken has not been complied with. This was decided in *Davies* v. *Skidmore* (5 Hill, 503), per BRONSON, J. But such a statute needs no adjudication to sustain it.

If we are called upon to look at this case upon the merits, it presents a single question arising upon undisputed facts. Mitchell and Cummings had obtained a judgment against Mount, as such executor, for $1,261.76, *after a trial at law upon the merits*. This statute, entitled, " Of the rights and liabilities of executors and administrators," ought to be permitted to speak forth its own decision of this case. It provides :

§ 20. " Where a creditor shall have obtained a judgment against any executor or administrator, *after a trial at law*

*upon the merits*, he may at any time thereafter apply to the surrogate having jurisdiction for an order against such executor or administrator to show cause why an execution on such judgment should not be issued."

§ 21. "The surrogate to whom such application shall be made, shall issue a citation, requiring the executor or administrator complained of, at a certain time and place therein to be named, to appear and account before him, and if upon such accounting it shall appear that there are assets in the hands of such executor or administrator, properly applicable, under the provisions of this chapter, to the payment in whole or in part of the judgment so obtained, the surrogate shall make an order, that execution be issued for the amount so applicable."

Exactly what these sections direct, was done. The executor rendered his account of the estate; he had been an executor above one year; he had $11,000 in his hands, avails of personal estate. In his account of the estate, and of the performance of his duties, he set up no claim that he had paid a single debt; there was no claim that there was any debt, that by law, was entitled to preference, or, that there was any amount of debts to be preferred that would exhaust the $11,000, or any part of it, and, although the whole debts of the testator would exceed the moneys in hand arising from the sales already made of personal estate, yet he showed to the surrogate, in his account, a large amount of real estate, more than sufficient, with the other personal estate not yet made available, to pay all the testator's debts, with the avails of $60,000 of the proceeds of the sales of real estate, which had then been realized. The surrogate could see from such an account, an abundance of means that could be ordered to be applied to debts, sufficient to pay all the testator's debts. Why, then, if it could be inquired into at all, should not the executor begin to pay? Should the court interfere, even if it had the power, with this exercise of judicial discretion of the surrogate? The legislature *intended* to prohibit the interference. If they have not done so, it is for want of power in the language they have employed. I think the

Supreme Court were in error, when they say, "the surrogate had no authority to direct an execution for the payment of this judgment." The Supreme Court give two reasons as the basis of their opinion. The first is, that the sections we have quoted, would nullify the previous provision contained in article 2 (3 R. S. 5th ed., p. 174, § 31), which directs every executor and administrator to pay the debts of the deceased, according to a specified order of classes: 1. Debts entitled to a preference under the laws of the United States. 2. Taxes assessed upon the estate of the deceased previous to his death. 3. Judgments docketed, and decrees enrolled against the deceased according to the priority thereof respectively. 4. All recognizances, bonds, sealed instruments, notes, bills, and unliquidated demands and accounts.

There are several answers that can be made to this:

1. The statute cited by the Supreme Court, by force of this same argument, also nullifies *that,* which we have supposed controls this case. Which statute, then, is nullified? Or, being equal, do they nullify each other? If both are not destroyed, which survives? The theory of the Supreme Court in this regard cannot be sound. One of these statutes is not in conflict with the other; one does not, therefore, nullify the other; nor is such the rule of treating statutes, in regard to their construction, even where they appear to be in conflict. The rule, as I understand it, is, "that two statutes shall stand together and both have effect if possible, for the law does not favor repeals by implication, and are never allowed of but where inconsistency and repugnancy are plain and unavoidable, and all acts *in pari materia* should be taken together as if they were one law."

There is no apparent inconsistency or conflict in the meaning, or in effect, between these two statutes. The statute cited by the Supreme Court is intended to be a direction to executors and administrators as to the manner of performance of their duties, and prescribes the order of preference to be observed by them in the payment of debts. This is its express object, and executors and administrators, when they proceed to discharge their duty, are bound to obey this direc-

tion. Where debts are all of the same class, all are entitled
to an equality in payment, whether it be entire or partial.
When the executor omits or refuses to perform this duty,
then the other statute furnishes a remedy, and that is its
object. The one prescribes the duty, the other furnishes a
remedy in case of neglect. Instead of being in conflict, or
the one nullifying the other, they are in harmony, and in aid
of each other, and both are thus useful and necessary. If a
debt, *not in judgment,* is omitted to be paid, and the exec-
utor or administrator refuses to pay it, the creditor can at
any time, *after* six months from the time of the granting of
letters, make a like application to the surrogate (2 R. S., 116,
§ 18). A judgment creditor can apply *before* six months
(§ 20). In the debts of the intestate, in the case before us,
there was no debt having a preference over others. The
appellants' claim, though it was in judgment, had no prefer-
ence in this respect, because the judgment was not perfected
previous to the death of the testator; none is claimed on that
account. If it had appeared, on the accounting before the
surrogate, that there were debts entitled to preference (though
it did not), and an order had been granted giving a lower
order of debt in the rule of preference a priority in payment,
this might have been the conflict which the Supreme Court
supposed. No such thing, however, appeared. It was for the
executor, when he was called upon to pay, and when called
upon to account before the surrogate, to show cause, to have
interposed this legal excuse, if it existed; and such legal
reason for declining to pay, the surrogate would have been
bound to regard. No such excuse was made, nor is now
claimed or pretended by the executor. It is a maxim "that
if he who can and who ought to have explained himself
clearly and plainly, has not done it when the occasion demands
and opportunity is presented to him, he cannot be allowed to
introduce subsequent restrictions, that which he has not at
the proper time expressed. It was error in the Supreme
Court to assume, and to base their decision on the assumption,
of the existence of debts having right of preference of pay-

ment, not shown, and not set up in the respondent's account, and, therefore, not in the case.

2. The second error of the Supreme Court, and one upon which they base their opinion, is, that there must have been a settlement of the accounts of the executor before the surrogate could make such an order. The statute requires no such thing, but provides to the contrary; nor is such the practice. (Dayton's Surrogate, 2d ed., 336, 337.) The meaning and intent of the word *account*, as used in this 21st section of the statute, as explained by the statute itself, is such an *account* of the condition and amount of assets as will enable the surrogate to determine whether there is any property applicable to the debt in question. It cannot be made to mean a settled or liquidated account, or an account then and there to be liquidated. The statutes relieve the executor from an accounting and liquidation till after one year from the time of taking out letters; that is, he cannot advertise for claims to come in until after six months, and the notice of publication must continue six months, whereas the account, in the present case, in the contemplation of the statute we have been considering, and upon which this case proceeds, allows such an account to be demanded at any time after letters are issued. Obviously, therefore, it does not contemplate a settlement of accounts. If on such an accounting as is intended by this statute, the executor should show that he had not been able to ascertain the amount of debts, or that there were debts which, by the statute, had preference in payment; that there was a doubt about the sufficiency of assets or means to pay all the creditors; or any other good reason, the surrogate would, doubtless, in the exercise of a discreet judgment, have refused the order. Such a case was not presented to him. The surrogate did exercise his discretion. If that question was subject to review, we should say, properly exercised it; but we have shown that that discretion was not the subject of review; we have shown that the Supreme Court obtained no jurisdiction of the case, and that if they had, they erred in their judgment on that review. I think the judgment of the

Supreme Court should be reversed, with costs of that court and of this court.

WRIGHT, DAVIES, BROWN, and DAVIS, JJ., concurred.

DENIO, Ch. J. I am of opinion that the order of the surrogate was erroneous. An executor or administrator cannot be compelled to render a general account of his administration, nor can he do so at his own instance, until after the expiration of eighteen months from the time of the taking out of letters. (3 R. S., 178, 182, §§ 57, 77.) But by another provision of the statute a creditor without judgment may apply to the surrogate for an order for the payment of his debt, or any portion of it, after six months from the time of granting the letters ; and by still another section a creditor who has obtained a judgment against the executor or administrator, after a trial on the merits, may apply for an order to show cause why an execution should not be issued. The surrogate in such a case is to issue a *citation* requiring the executor, &c., to appear and account before him, and if it shall appear " upon such accounting " that there are sufficient assets in the hands of such executor or administrator, properly applicable under the provisions of this chapter " to the payment in whole or in part of the judgment so obtained, the surrogate shall make an order that execution be issued for the amount so applicable." (3 R. S., 204, §§ 18, 20, 21, 22.) The statute appears to contemplate that an estate may be so circumstanced that a particular debt might be properly paid, or a judgment satisfied, before the arrival of the period for final accounting, and without such final accounting being had ; and such cases, doubtless, often occur. Where a creditor has obtained such a judgment a provisional accounting is to be had, so far as to ascertain that the executor has the means of paying the particular debt or a part of it, without prejudice to himself or any other creditor. If the affidavit of the respondent could be considered an accounting, it would appear that he had in his hands realized assets to less than thirty per cent of the debts. If the funds received for real estate sold should be included, the amount would not pay a

dividend equal to one-half of the debt. But the sale of the real estate having taken place under an order of the Supreme Court, the executor was not obliged to account to the surrogate for these moneys. The judgment was not entitled to any priority in payment over the other debts of the testator, but in case of a deficiency was entitled to a *pro rata* share. It is only judgments and decrees rendered against the deceased in his lifetime that have a preference over simple contract debts. If this judgment, therefore, should be paid in full, the judgment creditors would obtain an unlawful preference over the other creditors, unless further assets, sufficient to pay all the debts, should afterwards come into the hands of the executor. The amount of the whole inventory, according to the affidavit, is much less than the aggregate of the debts, and a considerable portion of the property was held under a lease for lives executed by the testator.

But I am of opinion that the order was erroneous, because an account was not ordered or taken. The statute requires that the citation should be for the executor to appear and account. The citation actually issued did not allude to an accounting, but required the executors to show cause why execution should not issue, as though there was a judgment in the surrogate's court. As the executors appeared, the citation would be disregarded if the subsequent proceedings had conformed to the statute. Again, there must be an accounting before an order for execution, and then it can be issued only for the amount of assets applicable to the payment. The affidavit cannot be considered an account. Its purpose was to show that an account at that time was unnecessary. I do not say that it was sufficient for that purpose; but if the surrogate determined it was not he should have ordered an account to be presented, which should have been examined by the surrogate and settled so far as to show that there were assets sufficient to pay the debts.

It is urged by the counsel of the appellants that an appeal to the Supreme Court was never perfected, because a proper bond was not given by the present respondent when he undertook to appeal to that court. One of the sections

already referred to declares that every order made under the preceding section shall be conclusive evidence that there are sufficient assets in the hands of the executor, &c., to satisfy the amount for which the execution is directed to be levied, and that no appeal shall be made from any such order unless the appellant will execute a bond with sureties to pay the amount directed to be levied if the order shall be affirmed. (§ 22.) The bond copied in the return in this case is the one required by 3 R. S., § 26 (2 R. S., 1st ed., 610, § 108), which is applicable to appeals from all orders of a surrogate except certain ones which are specified. I am of opinion that as the order appealed from cannot be said to have been made under the provisions authorizing an award of execution upon a citation to account, and upon an accounting had pursuant to such citation, the bond required in such cases need not have been given. As the order was wholly unauthorized by the statute, it has not the effect which the statute attributes to such orders, and may be reviewed on giving the security required on appealing from orders in respect to which the several provisions applied. In *Davies* v. *Skidmore* (5 Hill, 501), it was held that a bond like the one given in this case was sufficient where the judgment upon which the surrogate had awarded executions was rendered by default, instead of a trial on the merits. It was thought that under 2 R. S., 1st ed., 88, § 32, a surrogate might direct executions to issue on any judgment. I am not clear that this was correct, but am inclined to the opinion that the exception in that section has reference to the more detailed provisions which I have cited from a later title of this chapter. However this may be, the case is an authority to show that the special bond is not required unless the order was made under these provisions, which was not the case as to the order appealed from.

I am for affirming the judgment of the Supreme Court.

PORTER and CAMPBELL, JJ., concurring,

Judgment reversed.