CANAL COMPANY *v.* GORDON.

1. The jurisdiction of a court of equity invoked to enforce a statutory lien, rests upon the statute, and can extend no further.

2. Exceptions to the report of a master in chancery cannot be taken for the first time in this court.

3. In a contract to make and complete a structure, with agreements for monthly payments, a failure to make a payment at the time specified is a breach which justifies the abandonment of the work, and entitles the contractor to recover a reasonable compensation for the work actually performed. And this, notwithstanding a clause in the contract providing for the rate of interest which the deferred payment shall bear in case of failure.

4. Where a release is fraudulently obtained from one of two joint contractors, the releasing contractor is not an indispensable party to a bill filed by his co-contractor against the other party to the contract.

5. Such a release so fraudulently obtained, does not operate to invalidate the lien previously secured.

6. A statute of California gives to mechanics a lien upon the flumes or aqueducts " which they may have constructed or repaired," provided suit be brought " within one year after the work is done." A canal company, having a part of a canal already made, which they could use at certain times of the year, but to use which at all times and with complete effect, it was necessary to extend to a river giving a full supply of water, employed two contractors to make this extension or new canal. The work was to be paid for in monthly instalments. A failure to make the monthly payment occurred June 7th, 1853. On the same day the contractors gave notice that the " contract was annulled and at an end,"

and they "no longer parties to it;" but to prevent injury to the company, stated that they would continue to work for another week, leaving the subject of payment to the company's honor, *when, unless a satisfactory arrangement was made, they would discontinue work.* On the 13th, no notice being taken of this letter, they again addressed the company, saying that, receiving no reply, they withdrew their former offer and all the note, except that part which declared the contract ended. On this case,

*Held,*

i. That the lien was filed within the year.

ii. That it affected only the extension or new canal.

APPEAL from the Circuit Court for the Northern District of California; the case being thus:

A statute of California gives to all persons performing labor or furnishing materials for the construction or repairs of any building a lien, jointly, upon the building which they may have constructed or repaired, or for which they may have furnished materials, to the extent of the labor done, or materials furnished, or both. And a subsequent statute extends the previous one so as to include in its provisions ditches, *flumes, or aqueducts,* constructed to create hydraulic power, or for mining purposes. It is provided, however, " that no lien shall continue for a longer period than one year after the work is done or materials furnished, unless suit be brought in a proper court to enforce the same *within that time.*"

With this statute in force, the South Fork Canal Company was desirous of having—for those purposes of mining to which in California water-conduits contribute aid—a canal or flume from a grand reservoir near Placerville *to the south fork of the American River,* a distance of about twenty-five miles. Beginning at the Placerville end, and making the canal in the direction purposed, they had, after they had made it about half way, a canal, which they used with a certain advantage. But by itself, this · part—a part between Placerville and Long Cañon—had no supply of water for more than two or three months in the year, and these were winter months. Then certain mountain streams fed it. Extended to the American River, the supply of water it was

expected would be both increased and be constant. The Company accordingly, in March, 1853, entered into a contract with two persons, named Gordon & Kinyon, for an extension of the work from the point where the already mentioned part ended, to the river to which they thought that it was desirable to bring it. This new part was divided into sections designated as sections 17 to 25.

By the terms of the contract it was stipulated that the work should *be completed by July 1st,* 1853. It was to be paid for monthly, however, in a way specified, as the work progressed: it being provided at the same time, that if any money due should *not* be paid when due, such amounts should bear interest at current rates till paid.

Under the contract Gordon & Kinyon worked till *the 7th day of June,* 1853, at which time, on estimate taken according to the terms of the contract, they were entitled for work done in May, to about $20,000. The money not being paid, they *on that day*—the date is important—gave the company notice by which, after stating that punctuality on the company's part in making its promised payments was indispensable to their (Gordon & Kinyon's) being able to pay the numerous men whom they had at work, and that they thus acted in order to avoid embarrassment and discredit to themselves, they declared the contract " annulled and at an end," and they themselves " no longer parties to it." Expressing, however, in strong terms their obligations to the officers of the company for their personal kindness, expressing also the great interest which they themselves felt in the " noble enterprise " which they had been directing, and " pride in the contract from the very difficulty of its execution and its importance relatively to the whole work," they added in a form " strictly confidential," and, as they said, for the purpose of allowing the company to make other arrangements without interrupting the work, that they would, for six days longer from the date of the note (June 7th), continue the work undertaken by them, at their own risk, and should " not ask pay beyond this date unless the company choose from their own sense of honor to pay." They added, that at the

end of the six days they would discontinue work unless a new and secure financial arrangement should be made, one either satisfactory to themselves or such as two of their own directors named would pronounce to be proper.

*Receiving no reply to this letter*, they wrote the company on the evening of the 13th of June that no action having been taken on the letter, nor answer given to it, and the six days having elapsed at 4 P.M. of the then 13th of June, they withdrew the whole of the former note—as they said that it was competent for them to do (the offers having been voluntary) —*except that part of it which declared the contract broken, annulled, and ended.*

On the next day Gordon informed the company in writing that Kinyon was only interested in the contract to the extent of one-third of the profits, and on the 21st of June, he and Kinyon filed a notice of their claim of a lien on "*the works known as the South Fork Canal*" for the amount which they claimed. A day or two after the delivery to the company of the note of the 7th, the amount due on the May estimate was tendered to Kinyon, who declined to accept it.

On the 23d of June, Gordon & Kinyon brought suit against the company, for the purpose of enforcing their lien.

A few days afterwards, that is to say, on the 28th, the directors, in their office at Placerville, Gordon being in the city of San Francisco, took from Kinyon a release, executed in the name of Gordon & Kinyon, of all claims against the company. The consideration paid Kinyon for this release was $2000 in money, and $3000 in the company's stock, estimated at par. The certificates for this stock were made out in the name of Kinyon's wife. The whole of this transaction was concealed from Gordon by Kinyon, who immediately after it proceeded to San Francisco, whence by the next steamer he fled the country.

*On the 12th of June* of the following year (1854), Gordon— having discontinued the suit already brought—filed a bill in the court, setting forth the contract, and the facts of the case, as above given, alleging that the contract had been broken by the company's failure to pay, that the work had

been done to the amount of $84,000, that the release was fraudulent, and praying that the release might be disre· garded, and the South Canal sold to satisfy his lien. An interlocutory decree being made in his favor, and the matter referred to a master, who reported $76,589 due (less $6200 credits) on the contract for work done on the canal, and $16,250 for work preliminary to it, such as roads, saw-mills, timber-slides, and such like things, which assisted in and were indispensable to accomplish the main work. No exceptions being filed, the report was confirmed, and a decree made for the amount reported, less the credits and less the $16,250 for preliminary work, this being held by the court not a lien under the statute. *And the lien was decreed to extend to the whole canal ; and the whole was directed to be sold to satisfy it.*

As respected the relation of the two parts of the canal, testimony in the case, it may be mentioned, stated that both parts were " parts of the same work, and each necessary to the other;" that to disconnect the two would lessen their value greatly; the work being worth " very little—valueless " —without the extension to the American River.

It was from this decree that the present appeal, one by the company alone, came.

*Mr. Wills, for the appellant,* contended—

I. That the contract in its nature was entire, and for the performance of the whole work, and that the contractors having abandoned it before completion, were not entitled to recover even for what they actually did. Any delay in the payment of the estimates by the company was to be compensated, according to an express provision of the contract, by the payment of interest thereon from the time of such non-payment until paid.

II. That the lien, if it ever attached, was lost, 1st, by the release to the company by Kinyon, one of the co-contractors ; 2dly, by the voluntary and needless dismissal of the first action ; and 3dly, by the failure of Gordon to institute the present suit until after the lapse of more than one year from

June 7th, 1853, which failure (Mr. Wills argued, on the letter of that date and of the subsequent 13th) was plainly evident;-it being clear from these letters that the contract was ended on the 7th of June, and that all work done afterwards, if any was done, was done voluntarily. The 12th of June, 1854, when the suit below was brought, was therefore more than a year after the work was finished, and the case thus was not within the statute.

III. That the lien, if attaching at all, was to be restricted to the part, branch, or division of the canal on which the work was actually done, and for which the materials were furnished, and not extended over the whole.

*Mr. Botts, contra :*

I. The first breach of the contract was made by the company's non-payment, and fully authorized the contractors to abandon the work and to sue on a *quantum meruit* for the work already done.* The provision with regard to the rate of interest did not authorize, or relieve from, the breach. On the contrary, it recognized the fact that a failure to pay would constitute a breach, and provided a measure of damages for the breach other than that fixed by California statute, which, in the absence of agreement, is interest at 10 per cent. The only effect, then, was to substitute the particular for the general measure of damages.

II. The release executed by Kinyon was palpably fraudulent.

III. Was the lien proceeded on within the year? The year ran not from the time when the company received notice of Gordon's election to abandon the contract, because it is not on the contract that this action is based, but from the period of the completion of the work, the value of which constitutes the complainant's claim. Tried by this test, the action was clearly within the time.

IV. The sale of the whole canal was rightly ordered. When the part upon which labor is bestowed is in its nature capable of being used separately and distinctly from the

---

* Cutter *v.* Powell, 2 Smith's Leading Cases, 18, notes.

other portions of the structure, the lien is properly restricted to that part.    But where the portion constructed by one mechanic is an inseparable part of the whole, whenever the use for which the thing is intended can in no degree be attained without the co-operation of all the parts, then, the liens of all the contractors rest upon the whole structure, and are not limited to their respective portions.    We go further.    Although the structure may possibly be divided without totally destroying the use for which it was intended, if the sum of the values of the different parts would be greatly less than the value of the whole, the lien of each contractor will rest upon the whole, and the structure will not be divided.    Or, if a particular part erected by a, particular contractor is comparatively worthless unless connected with the other parts, no division will be made.    The extension was part and parcel of the original plan, the object being to conduct the headwaters of the South Fork to the " Placer " mines at Placerville.    That the canal was begun at the Placerville end, and that the winter streams or *arroyos* were turned into the channel as the work progressed, in no manner affected the integrity of the original design. The canal is a single structure intended for a single purpose.    Any division of it destroys the structure; and if it were divided into the sections, or artificial divisions for the purpose of contract, each part in the hands of a separate owner would be comparatively useless.    The value of each lien would of necessity be impaired, if not destroyed.    To cut up the flume into sections and assign his portion to each contractor, would be to give some of them aqueducts which had, and could have, no water to carry.

The decree, in short, was too favorable to the appellants. It ought to have been in favor of Gordon for the entire sum claimed.

Mr. Justice SWAYNE delivered the opinion of the court.

This is an appeal in equity from the decree of the Circuit Court of the United States for the Northern District of California.

Gordon was the complainant, and the appellants were the defendants in that court. The record is very voluminous, but the questions presented for our determination are few in number, and their proper solution is, we think, attended with no serious difficulty.

We shall confine our opinion to the objections to the decree, taken in the argument for the appellants. According to the rule of this court, the appellee can ask nothing here but what the decree gave him. It is the appellants who complain. The questions which we are to examine are such as they present for our consideration. The position of an appellee in this court is simply defensive. It is only where both parties appeal, that a case is open here for examination as it was in the court below.

The bill was filed to enforce a particular lien given by a statute of California. The jurisdiction of the court rested upon this basis, and could extend no further.

The case was referred to a master. He reported that the defendant was indebted to the complainant in the sum of $76,589.89, with interest from the 13th of June, 1853, for work done upon the canal of the defendant, pursuant to the contract out of which this litigation has arisen: and in the further sum of $16,250.50, for what the master terms "preliminary work," without which, he states, the contract could not have been fulfilled. The latter work consisted of the building of saw-mills, railroads, other roads, an inclined plane, timber-slides, and other apparatus. The particulars are given in a schedule annexed to the report. He reported further that the defendant was entitled to credits amounting in the aggregate to $6200. According to the rules of the Circuit Court, the parties were allowed a certain time within which to file exceptions, and failing to do so, the amounts found by the master were to be taken as conclusive. No exceptions were filed by the appellants.

The court disallowed the amount found for the preliminary work, holding it not to be a lien. The amount of the credits was deducted from the amount found to be due for

the work done upon the canal, and a decree was rendered for the balance, with interest.

. The finding of the master is as conclusive here as it was in the court below. There has been no controversy upon that subject. It is not denied that the amount is correct—if the complainant had not forfeited his right to any compensation by the violations of the contract alleged to have been committed by Gordon & Kinyon. This part of the case has been argued very fully by the counsel on both sides. We have looked carefully into the evidence. The result is, that we are entirely satisfied with the report, and in this respect with the decree. We think the fault of the rupture lies wholly with the company. Gordon & Kinyon adhered to the contract, and pursued the work longer than they were bound to do. When they retired they were fully justified, and had a clear equity to be paid a fair compensation for the work they had performed.

The release given by Kinyon to the company cannot avail them. It was a gross fraud. The evidence fixes upon it, and sets in the strongest light, this character. It would be a waste of time to discuss the subject. Our minds rest upon the conclusion we have arrived at, undisturbed by a doubt.

Yet, the release is not without effect. It severed the connection of Kinyon with the contract, and extinguished any claim which he might otherwise have had to be heard in this litigation. He can have no interest in the result, whatever it may be. Complete justice can be done between the parties before us, and the whole case disposed of without his presence in the record. He is, therefore, not an indispensable party. The company are estopped to deny this proposition. His relation to the case is not unlike that of an obligee in a title bond, to a suit upon it for specific performance by an assignee, to whom the obligee has parted with all his interest in the bond. In that class of cases it is held not to be indispensable that the assignor should be a party.

The court below held that Gordon had a lien upon the entire length of the canal or flume, extending from the

grand reservoir, near Placerville, to the South Fork of the American River, a distance of about twenty-five miles. When the contract with Gordon & Kinyon was entered into, the flume was completed from the reservoir to Long Cañon, a distance of eleven and two-third miles. Water flowing through it was used by means of several outlets for mining purposes. It was fed from sources other than the South Fork. The contract with Gordon & Kinyon was for the extension of the canal, by the construction of sections " from section 17 to 25 inclusive." Their work commenced where the existing canal ended, and reached to the South Fork of the American River. The object was to make use of that stream as an additional feeder, and thus to increase the supply of water in the canal.

The two parts of the work—the one extending from the reservoir to the cañon, and the other thence to the South Fork—were known respectively as the lower and the upper section. The two sections were constructed by different contractors, and, as already shown, at different times. The former was completed and in use before the latter was begun. In these respects they were distinct works. The points of identity are continuity and a common object, use, and ownership.

The lien laws of California provide that all contractors, laborers, and other persons "furnishing materials for, or employed in, the construction of any bridge, ditch, flume, or aqueduct, shall have a lien upon the structure," which they may have constructed or repaired, or for which they may have furnished materials of any description, "to the extent of the labor done, and materials furnished, or both." It is further provided that the lien shall not bind the structure for a longer period than one year after the work is done or materials furnished, unless suit be brought to enforce the lien within that time.

Several objections have been taken to the decree touching the lien.

It is not denied that it became fixed by a regular compliance with the preliminary statutory conditions. But the

appellants insist that it was extinguished by the release given to them by Kinyon. It would be a mockery of justice to allow an instrument so stained with turpitude to have such an effect. The subject has already been sufficiently considered.

It is said the lien was waived by the dismissal of the prior suit. The dismissal of that suit can obviously have no effect upon the rights of the parties in this litigation.

It is insisted that this suit was not brought in time to feed and preserve the lien. The evidence shows that the work was continued by the contractors down to the 13th day of June, 1853, inclusive. This bill was filed on the 12th day of June, 1854. That was within the time prescribed by the statute.

It is urged that the decree is erroneous in holding that the lien extended the entire length of the canal instead of limiting it to the upper section, where all the work was done. Is this objection well taken? Liens of this kind were unknown in the common law and equity jurisprudence both of England and of this country. They were clearly defined and regulated in the civil law.* Where they exist in this country they are the creatures of local legislation. They are governed in everything by the statutes under which they arise. These statutes vary widely in different States. Hence we have found no adjudication in any other State which throws any light upon the question before us, and there has been none in California. We are, therefore, compelled to meet the case as one of the first impression.

We have already shown that the upper and lower sections were distinct works in several essential particulars, to which we need not again advert. The lower one having been finished and in use before the upper one was contracted for, if those having a lien upon the former, had insisted that it became extended over the latter, as soon as the latter was completed, no legal mind, we apprehend, could have doubted that the claim could not be sustained. If it could, Gordon's

---

* Domat, §§ 1742, 1744.

lien might have been rendered valueless. We think the converse of this proposition applies with equal force. If a lien upon the lower section could not have been extended over the upper one, upon what principle can it be maintained that Gordon's lien embraced the lower section? A lateral feeder constructed and intersecting the main line after it was completed, would certainly not be subject to a previous lien upon the main line, if such a lien existed. We can see no substantial difference between that case, and the one before us. The upper section was only an additional feeder. That it was an elongation of the main line, and not a lateral work, does not affect the principle involved. The controlling circumstances and the object in both cases would be the same.

We think the language of the statute rightly interpreted is decisive.

The lien is given to contractors and laborers upon the ditch or flume " which they may have constructed or repaired, . . . to the extent of the labor done and materials furnished." The work of Gordon was all done upon the upper section. He had nothing to do with the lower section. So far as he was concerned, and for all the purposes of this litigation, they were distinct and independent works. A different principle would produce confusion, and lead to serious evils. We have no difficulty in coming to the conclusion that the decree in this particular is erroneous.

It is, therefore, REVERSED, and the cause remanded to the court below with instructions to enter a decree

IN CONFORMITY WITH THIS OPINION.

Mr. Justice FIELD, dissenting. I dissent from so much of the opinion and decision as limits the lien of the contractor to that portion of the canal which was constructed by him. I think the lien extends to the entire canal, as much so as a lien for work upon a wing of a house extends to the entire building.

MILLER and GRIER, JJ., concurred with Field, J.