Mr. Justice Hagner
delivered the opinion of the Court:
In the spring of 1883 P. EL Paine, the owner of lots at the northeast corner of H and Seventeenth Streets northwest, Washington, undertook the erection of a large building thereon, to be occupied as an apartment house; and in April of that year a contract in writing was entered into betwefen him and the complainant, a manufacturing firm of Trenton, N. J., to construct a steam heating apparatus in the new building for the sum of $3,500. Paine afterwards sold the property to an association incorporated in New York under the name of The Richmond, which accepted all the obligations, and became entitled to all the benefits of Paine’s contract. The complainant placed in the building all the materials requisite for the work, and received $1,700 on account. It proceeded with the work, and also performed extra work, for an agreed price; but dissensions arose between it and the owners, who claimed that the work had not been properly done, and refused on that ground to complete the payment. Finally, on the 6th of June, 1884, the following notice of an intention to hold a mechanics’ lien on the building was filed in the office, of the clerk of this Court:
The Phcenix Iron Company, a cor-" poration unde)' the laws of New Jersey, Claimant,
vs. V 890.
John F. Hanna and Mahlon Asheord, Trustees of The Richmond,

Owner.

Notice of lien.
Notice is hereby given that we intend to hold a mechanics’ lien upon parts of lots numbered 23 and 24 in W. *184 B. Hill’s trustees and others subdivision of lots in square numbered 165, being 100 feet on Seventeenth Street by 30 feet on H Street N. W., on the northeast comer of said streets, in the City of Washington, in the District of Columbia, and the building thereon, for the sum of $2,337.10, due to us from the owners thereof, for labor upon and materials furnished by us in the construction and repairs of heating apparatus of said building, under and by virtue of a contract with said owners by their agent.
The Phcbnix Iron Company, Claimant.
Pr. Robert B. Lines, Attorney.
The present bill was afterwards filed for the enforcement of the lien. After the defendant had answered, the cause was referred to the auditor, to ascertain and report from the evidence what amounts, if any, had been expended by defendant for work which should have been done by complainant under the contract, or to make good, work defectively done by complainant; and what further sum, if any, it would be necessary to expend to supply work omitted, and to remedy work defectively performed Toy complainant under the contract; and, also, what amount complainant expended, if anything, outside of thd sums stipulated to be paid by the contract, to overcome obstacles to the heating of the building caused by defendant’s fault.
The auditor filed his report, to which complainant and defendant excepted, both with respect to the results and the principles on which the findings were based.
The decree awarded $1,510.56, and interest from March 10, 1884, as due by The Richmond to complainant, declared it to be a lien on the real estate; and directed its sale, unless payment was made, by a designated day; and disallowed the defendant’s cross demands.
Both complainant and defendant appealed from the decree.
1. The first objection to the decree relied on by the de *185 fenclant in the argument here, is addressed to a supposed defect in the form of the notice of lien, which it is insisted asserts that the contract referred to was made with Hanna and Ashford, trustees of The Richmond; whereas, the bill sets forth a contract made with or adopted by The Richmond. But we do not think this objection is supported by the words of the notice itself, or even by the caption prefixed, which plainly enough shows that The Richmond was the owner of the property referred to, and that the contract was made with The Richmond by its agent.
But we hold that it was altogether unnecessary to have attached any such caption, and that a notice is entirely sufficient under Section 693, R. S. D. C., which states plainly, as this notice did, the intention of the claimant to hold a lien on the building; clearly describing the lot of ground, and specifically setting forth the amount claimed and stating that it was for labor and materials furnished in the construction and repair of the heating apparatus in the building constructed on the lot so described.
The notice of intention to hold a lien is required rather in the interest of ■ third persons than of the owner of the property, to the end that subsequent purchasers or incumbrancers resorting to the record for information as to the state of the title in this particular, may there be made aware of the existence, amount and character of all demands against the property, in the form of mechanics’ liens; and if the notice so filed furnishes all the information requisite to disclose these points of inquiry, the purpose of the law has been gratified, although there may be no formal caption attached, or although the caption may not be in all particulars critically correct.
2. It is next contended that the decree below should be reversed, because the notice of June 6, 1884, was not filed within three months after the work of the complainant was completed. The complainant averred in its bill that the apparatus, according to the terms of the contract, was to *186 have been, completed by September 1, 1883, but that in consequence of alterations and extra work required or made necessary by said Paine and the agents of The Richmond, its completion was delayed until the 10th of March, 1884, on which day it was fully completed. If this averment be correct, the notice was filed in time, even if the language of the act is to be construed as referring to the completion of the heating apparatus and repairs, as the point from which the three months is to be computed.
The defendant points to the statements of two of the witnesses who testify that the work was finished and the final tests made in February, 1884; but it appears that from December, 1883, there had been a constant controversy between The Richmond’s agents and the Phoenix Company, as to the delays in the completion of the work; and that as late as the 28th of February, the former made a formal demand upon the Phoenix Company that it should forthwith proceed to complete the work. On the 6th of March the complainant made the reply of that date, in which it charges upon The Richmond the responsibility for the delays; asserts that its work would have been entirely satisfactory if the building had been in proper condition to receive the apparatus, and refuses to proceed further with the work because of the defendant’s default.
Thus it appears that within the three months before the notice was filed, the defendant was insisting that the work was still incomplete; and the complainant was refusing, for the reasons stated, to do further work on the apparatus. It is further proved that in April the complainant was applied to to make good a crack in one of the boilers and performed the repairs as part of its original obligation and without charge, because such repairs were included in its agreement.
In South Fork Canal Co. vs. Gordon, 73 U. S.; 6 Wall., 561, certain contractors who had engaged to construct and complete a mining canal by July 1,1853, addressed a notice *187 to the canal company on the 7th of June, declaring they should hold the contract annulled because of the company’s failure to make the payments required by the contract, but also stating that, to allow the company to make other arrangements, they would for six days longer continue the work without charge. On the 13th of June, receiving no reply from the company, they gave a second notification refusing to proceed further with ■ the work, and repeating that they adhered to their former statement that the contract was annulled. In a few days thereafter they filed a notice of their intention to claim a lien on the canal for their work.
By the law of California, no such lien could continue for a longer period than a year after the work was done and materials furnished, unless suit was brought to enforce the same within that time. A bill in equity was filed for the purpose on the 12th of June, 1854, which was more than a year from the date of the first letter of the contractors, but within a year from the date of the second letter. It was insisted by the defendant that the computation of the statute year should not be reckoned from the latter day, because the work performed during that week, being voluntary, could not be considered as performed under the contract.
The Supreme Court held that the failure by the canal company to make the payments justified the contractors in abandoning the undertaking, and entitled them to recover a reasonable compensation for the work they had actually done, and to enforce it by a mechanics’ lien; and that the bill was filed within the statutory time, which should be reckoned from the expiration of the week during which the work was performed voluntarily; and affirmed the right of the complainants to a lien for their, claim for a large sum, which had been found by the master to be the fair value of the work, after crediting a counter claim of the defendants. The decision in that case was a refusal to rule with strict *188 ness against the claim of workmen, the very class of persons for whose interest and protection, as has frequently been said, these remedial statutes were enacted.
This objection was made during the argument before us, for the first time in the progress of this litigation. In the case last referred to (6 Wall., 561) the Supreme Court refused to consider exceptions to the report of the master, which were made for the first time in that argument in that Court.
In the defendant’s answer, the averments of the eighth paragraph of the bill as to the non-completion of the work until the 10th of March are admitted, although the blame for the delay is charged against the complainant. And although the answer to the ninth paragraph of the bill commences with a general denial, it concludes with the averment that the work is not yet completed. If the defendant had then intended to insist upon the point now under examination, it ought certainly to have denied the statement in the answer; and then the complainant would have been warned to prepare by its evidence to meet the denial.
The testimony of the two witnesses, relied on as showing that the work was completed in February, 1884, I understand simply as a statement that at that date the apparatus had all been placed in position; but not as asserting, against the averments of the notice and of the bill, that there was no work done afterwards, as late as the 10th of March, such as must necessarily be performed from time to time, about such an apparatus, whenever experiment and use discloses that it does not work smoothly, and needs the usual readjustment constantly required in such work before it can be received as a successful working machine.
The cause was argued before the justice holding the equity term, without disclosing this defence. The defendant’s various exceptions to the auditor’s report did not embrace this point; and it was not mentioned in the argu *189 ment before the justice from whose decree this appeal is taken.
There are certain requirements to be observed in this special proceeding, jurisdictional in their character, which parties, therefore, cannot waive, in such wise that they may not be subsequently renewed. The notice of lien, for example, must describe the property and state the character and value of the work done; and no evidence afterwards can supply the omission of such requirement. But the question as to the date at which the work was completed is one of fact, to be decided when controverted, upon testimony in pais. In such an inquiry, the defendant’s admission that the work was not completed until the 10th of March would be competent as a waiver of any subsequent objection that the notice was not filed in time. And after it has by its answer admitted that such was the case, and has for more than three years, in all these various proceedings, waived any insistance upon the point, it is too late to claim for it the favorable consideration of the General Term "sitting on appeal in an equity cause. Phillips on Mechanics’ Lien, sec. 331.
But a further and conclusive reason exists why we should hold the claim of lien was not filed too late, namely: that the proof shows that the building was not completed until after the 10th of March, 1884; and our statute makes the completion of the building the point from which the time for the filing of the notice of the lien is to be reckoned, and not the completion of the work, as was assumed by the defendant in the argument, and seems to have been acquiesced in by the complainant also.
The language of Section 693 is explicit, that the workman shall file “within three months after the completion of the building or repairs, the notice of his intention,” etc. Again, in Section 696, the time at which it is provided the lien shall cease to exist, shall be at the expiration of one year from the completion of the building or repairs. In *190 this respect the existing law differs from the provisions of the Maryland Act of 1791, which was made to protect master workmen who might be engaged on buildings in the new Federal City; and from those of the act of Congress of 1833, which provided for mechanics’ liens within the District. In both those acts the period of limitations was to be measured from the performing of the work or furnishing thé materials.
If, therefore, we were required to examine this objection, so effectively waived by the defendant, we would, for this further reason, pronounce it not well founded.
3. To the objection that there could be no recovery by the complainant because the architects had not given a certificate that the work had been properly performed, it is enough to say that the provision referred to in the contract required that such certificate should be given of the performance of the work “agreeably to the drawings and specifications made by the architects and signed by the parties thereto and thereto annexed,” “ and after the drawings and specifications have been returned to the architects; ” whereas, it is admitted that there never were any such drawings and specifications prepared by the architects. The failure to procure such certificates is, therefore, no more a bar to the complainant’s recovery here than its failure to erect and finish the new building; which is gravely left in the contract as one of the items of work to be performed by the Phoenix Company.
4. It is insisted further that the complainant has claimed in its bill a recovery solely upon the contract, while the claim under the evidence is upon a quantum meruit.
But the complainant’s bill charges that it did not perform the contract, as to some of its elements, because of the delays interposed by the defendant; but nevertheless that ultimately it did all the parties intended it should contract to do; and also prepared extra work and furnished extra materials, and for all this work it claims payment.
*191 In such a case, where the plaintiff is claiming for the value of what he actually did, the Supreme Court, in Dermott vs. Jones, 2 Wall., 9, says: “He must produce the contract upon the trial and it will be applied as far as it can be traced; but if by the fault of the defendant the cost of the work or materials has been increased, in so far the jury will be warranted in departing from the contract. In such case the defendant is entitled to recover for the damages he may have sustained by the plaintiff’s deviation from the contract not induced by himself, both as to the manner and time of the performance.”
It seems impossible that the defendant supposed the complainant was to perform the contract according to its literal terms, for that would have involved an absurdity and practical impossibility on the part of the Phceiiix Company, and it is not easy to see how the defendant could insist upon the literal observance only of such of its elements as it regarded as beneficial to itself. It was practically disregarded as a' contract in its strict sense, although such of its terms as were not plainly outside of its understanding “should be applied as far as they can be traced.”
5. The defendant objects that by the true interpretation of the contract, the complainant undertook well and sufficiently to heat The Richmond building; and as the apparatus did not effectually accomplish that result, there should be no recovery here.
The complainant replies that the apparatus was adequate to the purpose, and would have effected it, except for defects in the design, and in the work on the building, for which the defendant only was responsible. Among other such defects, it complains that the builders left appertures beneath the window sills (to allow, as thej^ explain, for the settling of the structure), large enough to admit quantities of snow, which was found lying on the top of the steam coils; and to allow the rapid escape of the heated air; also, that the furnace chimney was not built according to the *192 drawings of the building shown to it; and that when it was changed it was still insufficient. Further, that an air chamber entirely too large, and injurious to the successful working of the apparatus, was left open over the boiler, which allowed the further waste of quantities of heated air; and that part of the heat required for the working of the apparatus, without its knowledge or consent, was diverted to warm the water in a large tank, for use in the bath rooms.
To hold that the undertaking of the complainant was absolutely to heat the building, in the face of such defects and changes, would, as argued by the complainant’s counsel, be practically to decide that the house must be adequately heated by the apparatus, although the roof were left off.
We think the auditor’s view of the obligation of the complainant respecting this work is correct — that the apparatus to be constructed with its machinery and equipments, was to be sufficient in quality, size and power to heat the building, as the same was exhibited in the original and amended plan shown to the complainant.
The amount due it according to this theory, the auditor found is fairly represented by the sum of $2,337.10; and without going into any discussion of the testimony on the point, we content ourselves with saying- that we approve of this finding, after carefully examining the proof.
He also reports that the condition in which the work was found, after it had been left by the complainant, required the expenditure of a considerable sum of money to pay the Baltimore workmen employed by the defendant; and we think the distribution of this expenditure between the complainant and the defendant by the auditor is reasonable and just. If we are to take the testimony of the complainant’s witnesses, several of whom appear very intelligent and well informed as to the subject, some of this work of the Baltimore workmen was needless, while other parts were rendered *193 requisite by tbe fault of tbe defendant. But it nevertheless seems to be established that there were some defects in the complainant’s work, as for example in the insufficient size of the supply pipes; and upon the whole we incline to the opinion that the auditor’s statement comes as near to being correct as we would expect any conclusion by this Court on the point to be.
We therefore think the justice below decided the case correctly and according to its substantial justice, when he decreed that the sum of $826.59, stated as the offset allowed to the defendant, should be credited upon the complainant’s claim, and that the residue should be established as a lien on the property, with interest from March, 1884.
We see nothing in the testimony to justify us in allowing the large amount claimed by the defendant for alleged loss of rent by reason of the defects in the apparatus. Whether the assumed loss of patronage would equally have occurred if the apparatus had been satisfactory or whether other causes of dissatisfaction, such as present themselves every day in hotels and apartment' houses, where no fault can be justly found with the contrivances for heating, may be chargeable with part or all of the loss; or whether the absence of lodgers, whose presence under an unskillful management would have resulted in loss instead of profit, may have been in fact a saving, are considerations that may b e so much affected by a varietjr of contingencies, and depend so much upon the whimsicalities of the expected lodgers, that it would be most unsafe upon the one sided statement presented by the testimony to allow the defendant’s claim.
If such unliquidated counter claims could be sustained, in such a form of proceedings as this (which we do not intend to decide), the elements essential to an intelligent examination of their merits should be more fully placed before the Court.

The decree below is affirmed.