Bright *v.* Dean.

---

# City Court.

### *Trial Term—March*, 1888.

## FRANCIS D. BRIGHT, ET AL., *against* WALTER A. DEAN.

Where a vendor agrees to ship a number of boat-loads of coal, to be paid for as each load is delivered, and the vendee refuses to pay for the first boat load after delivery, the vendor is not liable for not delivering the balance. The vendor may in such case elect to treat the contract as rescinded, and recover the value of what has been delivered.

The action is on a past-due promissory note made by the defendant, and delivered to the plaintiffs for $1,541.30. The answer sets up no defense to the note, but pleads as a counter-claim the breach of two independent contracts, one made April 6, 1886, for the delivery of six boat-loads of coal of 182 tons each, payable thirty days after delivery.

The answer alleges the delivery of five of said boat-loads
and a refusal to deliver the remaining one boat-load, to
the defendant's damage, as it is alleged, of $171. The
second contract was made August 17, 1886, for the deliv-
ery of eight boat-loads of coal, payable in like manner.
Five of the eight loads were delivered, and three were
not, to the defendant's damage, as it is alleged, of $513.
The plaintiffs in reply admit the making of the contracts,
as alleged by the defendant, and the breach thereof as
charged, but deny that any damage resulted to the defend-
ant in consequence, and plead as an excuse for the breach,
that the defendant, in and by the contracts aforesaid,
agreed to pay for said coal within thirty days after the
delivery of each of said boat-loads ; that he failed to make
payments in accordance with this understanding, where-
upon the plaintiffs elected to consider the contracts
terminated, and notified the defendant that they would
deliver no more coal in pursuance thereof. The dispute,
therefore, arises in reference to the counter-claim, and not
as to the plaintiff's cause of action. On April 28, 1887,
by an order duly entered, it was directed that the action
be severed, and that plaintiffs have judgment against the
defendant for $838.10, the part of the plaintiffs' claim
admitted by the pleadings, and that the action be con-
tinued against the defendant for the remainder of the
claim, if the plaintiffs elected to continue the same. The
plaintiffs did so elect, and the action was continued as to
the $720.90, which is put in dispute by the counter-claim.

*Schenck & Punnett*, for plaintiffs.

*T. C. Cantine*, for defendant.

McADAM, Ch. J.—The defendant claims that the plaint-
iff's failure to deliver the four boat-loads of coal consti-
tutes such a breach of their contracts as entitles him to
the damages which form the subject of his counter-claim.

Bright *v.* Dean.

The solution of this question requires inquiry into the terms of the sale to ascertain whether the non-delivery was owing to inexcusable neglect on the part of the plaintiffs, as imputed by the defendant, or to the breach of some prior obligation on the part of the defendant, amounting to a condition precedent to such delivery; as asserted by the plaintiffs. The evidence, viewed in the light of the course of delivery between the parties, and their correspondence and acts, proves that the understanding was that the coal was to be delivered one boat-load at a time, to be paid for within thirty days after the delivery of the bill of lading therefor. The correspondence is significantly strong upon this subject, and fully bears out the construction which the plaintiffs have put upon the contracts. When a boat-load was delivered, and thirty days were allowed to go by without payment, the defendant treated himself as in default, and added the interest from the time the thirty days expired. He did not claim that he was not in default until all the coal was delivered, but computed the thirty days from the time of each separate delivery. Assuming this finding of fact to be correct, it is easy to apply the law. The rule is, that if there has been a special contract, and the plaintiff has performed a part of it, according to its terms, and been prevented by the act, default, or consent of the defendant from performing the residue, he may recover compensation for the work actually done, or for goods actually delivered, and the defendant cannot set up the special contract to defeat him.

Thus, in Withers *v.* Reynolds (2 *B. & Ad.* 882), which was an action for not delivering straw according to the following agreement: "John Reynolds undertakes to supply Joseph Withers with wheat straw delivered at his premises until June 24, 1830, at the sum of 33*s.* per load of thirty-six trusses, to be delivered at the rate of three loads in a fortnight; and the said J. W. agrees to the said J. R. 33*s.* per load for each load so delivered

from this day till June 24, 1830, according to the terms of this agreement." It appeared that the plaintiff had refused to pay for the straw upon delivery, and it was contended that he was not bound to do so, and that, as no time was named for the payment, he might defer it till the expiration of the contract, or that, at all events, the promises to deliver the straw, and to pay for it were independent, and should be enforced by cross-action. But the court held that the vendor had a right to be paid *toties quoties* on the delivery of each load, and that the plaintiff's refusal to do so gave the vendor a right to rescind the contract, and that the plaintiff was properly nonsuited. The court in that case put its decision upon the special wording of the contract "for each load so delivered," &c., or otherwise, the delivery of the whole might have been considered a condition precedent to the right to recover any compensation. The parties hereto evidently intended that the construction placed upon the contract in the case cited should govern the contracts made by them. Their acts and correspondence clearly demonstrate this, and their intention must control the interpretation. It would seem clear that if A. agrees to sell to B. ten tons of coal, to be paid for as each ton is delivered, and B., after receiving the first ton, declines to pay for it, that A. may sue, and recover for that ton without averring or proving a tender of the other nine, upon the principle that, although the promises are mutual, and A.'s promise to deliver the first ton a condition precedent to his right to recover anything, yet B.'s promise to pay for the first ton on delivery may be regarded as a condition precedent to his right to demand any further delivery under the contract. B.'s failure clearly put him in default, and precludes him from complaining that A. has not performed his part of the contract. A., on the other hand, not being at fault, may either treat the special contract as rescinded, and recover the value of the one ton delivered, or he may sue upon the special con-

tract, and recover the agreed price of that ton, and his loss of profit on the other nine. No vendor is obliged to trust a vendee further than the terms of sale give him credit. Courts must enforce the terms agreed upon by the parties, and cannot substitute others for them to which the parties might not have assented at the time the contract was entered into. In the Canal Company *v.* Gordan (6 *Wall.* 561), it was held that in a contract to make and complete a structure, with agreements for monthly payments, a failure to make a payment at the time specified is a breach which justifies the abandonment of the work, and entitles the contractor to recover a reasonable compensation for the work actually performed (see also R. R. Co. *v.* Spank, 24 *Ill.* 588). The failure to perform was in these cases deemed equivalent to a consent to the rescission of the contract, on which the party not at fault was authorized to act. This seems to be consistent with reason and justice; for no person should be allowed to take advantage of his own wrong or neglect, or screen himself from payment for what has been done for his benefit, by a tortious failure or refusal to perform his part of the contract, when such failure or refusal may have caused the very condition of affairs with which he is finding fault. The application of these rules to the findings of fact in this case disposes of the defendant's counter-claim, and proves it to be without merit. Another feature of the case which militates against the defendant is, that after the alleged breach he made and delivered to the plaintiffs the note in suit, by which he acknowledged an indebtedness to them of $1,541.30. The contracts alleged to have been left unperformed by the plaintiffs were made in April and August, 1886. The note was made by the defendant, January 26, 1887—long after the breaches complained of. No claim for damages was made then, and the giving of the note is *prima facie* evidence of an accounting and settlement of all demands between the parties, and that the maker was indebted to the plaintiff upon

such settlement to the amount of the note (Lake v. Tysen, 6 N. Y. 461).

Upon the entire case, the plaintiffs are entitled to judgment for $710.90, the balance due, with $38.70 interest, aggregating $749.60, with costs.

Affirmed on appeal by the general terms of the city court and common pleas.