BAN v. COLUMBIA SOUTHERN RY. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1902.)

No. 752.

1. JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—SUIT BY AS-SIGNEE.

A federal court is without jurisdiction of a suit on a cause of action existing in favor of a partnership, brought by one partner in his own right and as assignee of the interest of his copartner, unless the bill shows that the citizenship of the assignor is such that the suit might have been maintained in that court by the firm.

2. SAME—JURISDICTIONAL AVERMENTS—NECESSARY PARTIES.

Plaintiff and another contracted as partners to do certain work in the construction of a railroad as subcontractors. By a contract between themselves, previously made and known to the principal contractor, it was agreed that plaintiff should furnish the materials and do the work, and receive and disburse the money received therefor, accounting to his associate only for a share of the net profits of the contract. After the completion of the work plaintiff brought suit in a federal court to enforce a mechanic's lien, filed in the name of the partnership, for the balance due therefor under the contract, alleging such facts in his bill and that no net profits were earned under the contract. Held, that it was competent for plaintiff to allege, for jurisdictional purposes, the contract between him and his nominal partner, and that under such agreement the citizenship of such partner did not affect the jurisdiction of the court, since he had no interest in the recovery and was neither an indispensable nor necessary party.

3. MECHANICS' LIENS—CONSTRUCTION OF STATUTE—"STRUCTURES."

The mechanic's lien law of Oregon of 1885 (Laws 1885, p. 13), which gives a lien for labor performed upon or material furnished to be used in the construction of "any building, wharf, bridge, ditch, flume, tunnel, fence, machinery, or aqueduct, or any other structure or superstructure," under the rule of construction applied to it by the supreme court of the state, includes a railway by the term "other structure."

4. SAME—OREGON STATUTES—APPLICATION TO RAILROADS.

Under the rule that repeals by implication are not favored, and that two statutes on the same subject shall stand together, and both be given

---

¶ 1. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249, and Mason v. Dullagham, 27 C. C. A. 298.

See Courts, vol. 13, Cent. Dig. § 867.

¶ 2. Averments of citizenship to show jurisdiction in federal courts, see note to Shipp v. Williams, 10 C. C. A. 261.

effect, if practicable or possible, the general mechanic's lien law of Oregon (Laws 1885, p. 13), as applied to railroads, was not repealed by implication by the special act of February 25, 1889 (Laws 1889, p. 75), which gives liens to a class of creditors not embraced within the terms of the general act, as well as to the same class, and provides a different method of procedure for their enforcement, but both statutes may be sustained as giving to the latter class a cumulative remedy as against railroads.

5. SAME—PROPERTY AFFECTED—RIGHT TO ENFORCE AGAINST RAILROAD EXTENSION.

Under the mechanic's lien law of Oregon a subcontractor who performs work in building an extension of a railroad may claim and enforce a lien therefor upon such extension only, and the fact that he does not include in his claim the entire road of the company does not violate any public policy of the state, nor give the company any ground to object to his claim.

Appeal from the Circuit Court of the United States for the District of Oregon.

For opinion below, see 109 Fed. 499.

The portions of the amended bill of complaint, referred to in the opinion of the court, are substantially as follows:

"That the defendant the Columbia Southern Railway Company now is, and at all times hereinafter mentioned was, a private corporation, incorporated and existing under and by virtue of the laws of the state of Oregon; that the defendant the New York Security & Trust Company now is, and at all times hereinafter mentioned was, a private corporation, incorporated and existing under and by virtue of the laws of the state of New York; that complainant now is, and at all times hereinafter mentioned was, a citizen of the empire of Japan and a subject of the emperor of said empire; that the amount in controversy between the complainant and defendants exceeds the sum of two thousand dollars ($2,000), exclusive of costs and interest; that defendants the Columbia Southern Railway Company, A. E. Hammond, and Archie Mason, and each and all of them, are citizens of the state of Oregon; that the defendant the New York Security & Trust Company is a citizen of the state of New York"; that the defendant the Columbia Southern Railway Company is the owner of that certain piece or parcel of land, together with all appurtenances thereto and structures thereon, known as the right of way of said Columbia Southern Railway Company, and being in the counties of Wasco and Sherman, in the state of Oregon (the same being particularly designated, and described in the amended bill); that about the ——— day of ———, 1899, the Columbia Southern Railway Company entered into a contract with the defendant A. E. Hammond for the construction of an extension of its railway from the town of Moro to Shaniko, to be constructed and built on said right of way; that on the 11th day of October, 1899, the said A. E. Hammond entered into a contract with the defendant Archie Mason for the construction of all grading, bridging, culverts, ditches, change of creek channels, track-laying, surfacing, and such other work connected therewith; that thereafter, on the 30th day of October, 1899, the defendant Archie Mason sublet to the complainant and one N. G. Seaman the tracklaying and surfacing of said railway; that the defendant A. E. Hammond was the original contractor in charge of the construction of said railway; that the defendant Archie Mason was a subcontractor under defendant Hammond, and as such was the agent of the defendant the Columbia Southern Railway Company for the construction of said portion of said railway; that about the ——— day of ———, 1899, the complainant and Seaman commenced to perform the work and labor provided for and required to be performed in and by the said contract, and continued to perform work and labor in the construction of said railway thereafter until on or about the 10th day of July, 1900, at which time complainant and Seaman fully completed the work provided for and agreed to be done by them, and they then ceased to perform work and labor under said contract; that said complainant

and said Seaman between the 30th day of October, 1899, and the 10th day of July, 1900, duly performed all the terms and conditions of the said contract between them and the said Archie Mason, and on said last-named date the work provided for by the terms of said contract was fully completed; that the agreed and reasonable price and value of the work and labor performed was and is the full sum of $32,365.86, of which said sum there had been paid in cash the sum of $7,000, leaving a balance of $25,365.86 due and owing from said defendant Archie Mason on account of work and labor performed in the construction of said railway; that after the completion of said contract as aforesaid, and within 30 days after said complainant and said Seaman ceased to perform work and labor in the construction of said road, and within 30 days after the completion of said railway, to wit, on the 8th day of August, 1900, said plaintiff and Seaman prepared and filed with the county clerk of Sherman county, in the state of Oregon, a claim containing a true statement of their account and demand against the said defendant Archie Mason, after deducting all just credits and offsets and alleging facts showing that the law as to the filing of such a lien had been fully complied with; that said complainant and said Seaman, in order to perform and complete the work specified in their said contract with said defendant Archie Mason, among other things did the following particular kind and amount of work [here follows a specification of the laying and surfacing of 46 miles of track and itemized accounts of the extra work done and the amounts due therefor]; that although said complainant and said Seaman repeatedly requested said defendant Archie Mason and the chief engineer of said railway company to measure and estimate the work done by them as required by the terms of said contract as hereinabove specified, yet said defendant Mason and said chief engineer refused and neglected, and have ever since refused and neglected, so to do, and have wholly disregarded their duty in that regard; that said defendant Mason and said engineer still refuse and neglect to comply with the terms and provisions of said contract; that a reasonable time within which to make and determine the final estimate of the entire work done by said complainant and said Seaman under said contract has long since elapsed; that said refusal, neglect, and failure of said chief engineer and his assistants was fraudulent and in bad faith, and in willful violation of the terms and conditions of said contract, and was collusively contrived with said defendants; that defendant the New York Security & Trust Company has or claims to have some lien or incumbrance upon or interest in the property hereinabove described, but complainant alleges that such interest, if any, is subordinate and inferior to the claim and lien of this complainant; that prior to entering into said contract, a copy of which is attached hereto, marked 'Exhibit A,' for track-laying and surfacing of said railway, with said Archie Mason, said complainant and said Seaman entered into an agreement by the terms of which, among other things, it was mutually agreed and understood that the said complainant, S. Ban, should furnish all labor and advance all money required to perform the work provided for and contracted to be done under said contract, and in consideration thereof should receive and disburse all money belonging to said partnership, and, when said work should be finally completed and settled for, should render to said Seaman a statement of all money received and disbursed, and pay over to him one-half of the net profits of said work; that said defendant Mason had due notice and knowledge of said agreement at the time he entered into said contract with complainant and said Seaman; that there are and will be no profits arising from said work or contract, and there will be no profits or money to be turned over to said Seaman; that heretofore, and since the filing of said mechanic's lien, and prior to the commencement of this suit, the said N. G. Seaman for value relinquished and transferred to complainant all his right, title, and interest in and to said mechanic's lien, and in and to the claim and demand against said defendant Mason, on account of the work and labor performed under said contract, as hereinabove set forth, and this complainant ever since has been, and now is, the sole owner and holder of said mechanic's lien, and of said claim and demand against said Columbia Southern Railway Company, said A. E. Hammond, and said Archie Mason."

Section 1 of the act of 1885, giving liens to mechanics, laborers, and others, reads as follows:

"Section 1. Every mechanic, artisan, machinist, builder, contractor, lumber merchant, laborer and other person performing labor upon or furnishing material of any kind to be used in the construction, alteration or repair, either in whole or part, of any building, wharf, bridge, ditch, flume, tunnel, fence, machinery, or aqueduct, or any other structure or superstructure, shall have a lien upon the same, for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building, or other improvement, or his agent, and every contractor, subcontractor, architect, builder, or other person, having charge of the construction, alteration or repair, in whole or in part, of any building, or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this act." Laws Or. 1885, p. 13.

Section 1 of the act of 1889 reads as follows:

"Section 1. That any and all person or persons who shall hereafter as subcontractor, materialman or laborer furnish to any contractor to any railroad corporation any fuel, ties, materials, supplies or other article or thing, or who shall do or perform any work or labor for such contractor in conformity with any terms of any contract, express or implied, which said contractor may have made with any such railroad corporation, shall have a lien upon all property, real, personal and mixed, of said railroad corporation: provided, such subcontractor, materialman or laborer shall have complied with the provisions of this act." Laws 1889, p. 75.

The appellant's assignment of errors is as follows:

"(1) That the court erred in holding that the lien upon railroads given under the general mechanic's lien law of the state of Oregon was repealed by implication by the act of the legislature of the state of Oregon approved February 25, 1889; (2) that the court erred in holding that the complainant, S. Ban, had no lien upon the railroad of the defendant Columbia Southern Railway Company for the money furnished by and the labor performed by him as stated in the complaint; (3) that the court erred in holding that the complainant's lien is or would be subsequent to and inferior to the lien of the defendant New York Security & Trust Company; (4) that the court erred in holding that the amended bill of complaint did not state facts sufficient to entitle the complainant to the equitable relief prayed for; (5) that the court erred in holding that the court was without jurisdiction to entertain the suit brought as alleged in the amended bill of complaint by the complainant, Ban, as assignee in part of Seaman; (6) the court erred in sustaining the demurrer to the amended bill and dismissing the amended bill of complaint; (7) that there is manifest error in this, to wit, in dismissing the bill for lack of equity, for the reasons as given in the opinion, or at all; (8) there is manifest error in this, to wit, in awarding to the defendants the Columbia Southern Railway Company and A. E. Hammond, or either of them, their costs and disbursements."

The contention of appellees is that the decree of the lower court dismissing the bill of complaint can be justified on four grounds:

"(1) The lower court had no jurisdiction. (2) The Oregon mechanic's lien act of 1885 does not authorize a mechanic's lien on a railway. (3) If the act of 1885 ever did authorize a mechanic's lien on a railway, it has been impliedly repealed by the railway lien act of 1889. (4) The effort of appellant is to secure a mechanic's lien on a portion only of the railway line of the Columbia Southern Railway Company."

A. C. Emmons and Williams, Wood & Linthicum, for appellant.
Snow & McCamant, for appellees.

Before GILBERT, Circuit Judge, and HAWLEY and DE HAVEN, District Judges.

HAWLEY, District Judge, after stating the foregoing facts, delivered the opinion of the court.

This is a suit to foreclose a mechanic's lien upon an extension of a line of railroad from Moro, Sherman county, Or., to Shaniko, Wasco county, Or., belonging to the Columbia Southern Railway Company, defendant herein. The record shows that a demurrer to the original bill of complaint, which was filed by complainant, Ban, was sustained by the court upon the ground that the statute of Oregon, which it was claimed authorized a lien for work and labor done was repealed by implication by a subsequent statute approved February 25, 1889. It was also held that Seaman, who was interested with Ban, should have been made a party complainant in the suit. Complainant thereafter filed an amended bill of complaint, to which the railway company and the defendant Hammond interposed a demurrer upon the ground that "it affirmatively appears from the complainant's bill that there is no equity therein, and the complainant is not entitled upon the facts alleged to the equitable relief prayed for, or any relief." This demurrer was also sustained by the court. The amended bill was dismissed, and judgment rendered in favor of defendants for their costs. From this judgment the appeal herein is taken. The material portions of the amended bill are set forth in the foregoing statement of facts, as are certain portions of the mechanic's lien laws of 1885 and 1889, and also the assignment of errors on behalf of appellant and the points relied on by appellees to sustain the judgment of the court below.

1. Did the court, under the facts stated, have any jurisdiction of this case? Section 629, Rev. St., among other things, provides:

"No circuit court shall have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the contents, if no assignment had been made."

The object and intent of this restriction as to suits brought by assignees were evidently to prevent and prohibit the making of assignments of choses in action for the purpose of giving jurisdiction to the national courts. The language of this statute must be interpreted by the purpose to be effected and the mischief to be prevented. In Bushnell v. Kennedy, 9 Wall. 387, 391, 19 L. Ed. 736, the court, speaking of the eleventh section of the judiciary act, said:

"The denial of jurisdiction of suits by assignees has never been taken in an absolutely literal sense. It has been held that suits upon notes payable to a particular individual or to bearer may be maintained by the holder, without any allegation of citizenship of the original payee, though it is not to be doubted that the holder's title to the note could only be derived through transfer or assignment. Bullard v. Bell, 1 Mason, 259, Fed. Cas. No. 2,121; Bank of Kentucky v. Wister, 2 Pet. 321, 7 L. Ed. 437. So, too, it has been decided, where the assignment was by will, that the restriction is not applicable to the representative of the decedent. Chappedelaine v. Dechenaux, 4 Cranch, 308, 2 L. Ed. 629. And it has also been determined that the assignee of a chose in action may maintain a suit in the circuit court to recover possession of the specific thing, or damages for its wrongful caption or detention, though the court would have no jurisdiction of the suit if brought by the assignors. Deshler v. Dodge, 16 How. 631, 14 L. Ed. 1084."

This line of exceptions illustrates the general character of cases to which the statute would not be applicable.

In Shoecraft v. Bloxham, 124 U. S. 730, 735, 8 Sup. Ct. 686, 31 L. Ed. 574, the court held that a suit to enforce the performance of a contract is a suit to recover the contents of a chose in action, within the meaning of section 629 of the Revised Statutes, and in the course of the opinion the court said:

"The terms used, 'the contents of any promissory note or other chose in action,' were designed to embrace the rights the instrument conferred which were capable of enforcement by suit. They were not happily chosen to convey this meaning, but they have received a construction substantially to that purport in repeated decisions of this court. They were so construed in the recent case of Corbin v. Black Hawk Co., 105 U. S. 659, 26 L. Ed. 1136, where the subject is fully considered and the decisions cited. There a suit brought to enforce the specific performance of a contract was held to be a suit to recover the contents of a chose in action, and therefore not maintainable, under the statute in question, in the circuit court of the United States, by an assignee, if it could not have been prosecuted there by the assignors, had no assignment been made."

We agree with the court below that:

"Unless Seaman's citizenship was such as to entitle him to bring this suit, Ban, as his assignee, cannot maintain it. If, without the assignment, in an action brought by Seaman and Ban, the court would have been without jurisdiction, it is equally without it when the action is brought by Ban in his own right under the contract and as the assignee of Seaman."

In other words, complainant, Ban, under the provisions of the statute cannot rely upon any rights under the assignment from Seaman in so far as the question of jurisdiction is concerned. But the question whether Ban, upon the facts alleged in the amended bill, can maintain the suit in his own name without the assignment from Seaman, presents other questions for our consideration. Upon the facts of the agreement with Mason the rights of Ban and Seaman were the same. They were equally interested in the contract and equally responsible under it, and if that condition existed at the time of the commencement of the suit Ban would not be able to maintain the suit in his own name. Seaman would be not only a necessary, but an indispensable, party complainant. It is, however, claimed that the agreement between Ban and Seaman was made prior to the contract with Mason and of which Mason had knowledge. This shows that at the time of the commencement of this suit Seaman had no interest whatever in the matter in controversy; that Seaman's interest, at best, was only in the profits; that there were no profits, and would be none if Ban should succeed and recover the entire amounts sued for.

The crucial test on this branch of the case depends upon the question whether, upon the facts stated in the amended bill Seaman was an indispensable party to the suit. The general principles relied upon by appellees are that a complainant seeking equity must bring before the court all such parties as are necessary to enable it to do complete justice, and that he should so far bind the rights of all parties interested in the suit as to render the performance of the decree which he seeks safe to the party called upon to perform it by preventing his

being sued or molested again respecting the same matter, either at law or in equity. 1 Daniell, Ch. Prac. 192; 1 Bates, Fed. Eq. Proc. §§ 39, 40. These general principles are well settled, and furnish more or less aid in determining whether or not any of the indispensable parties to the suit have been omitted. If Seaman is not an indispensable party, he need not be made a party complainant herein; but, if he is an indispensable party, he must be brought in, wherever he may reside, and, if bringing him in deprives the court of its jurisdiction, complainant must abide by the consequences.

In Barney v. City of Baltimore, 6 Wall. 281, 284, 18 L. Ed. 825, the court, in discussing the subject of parties to suits in chancery, formal, necessary, or indispensable, said:

"There is a third class, whose interests in the subject-matter of the suit and in the relief sought are so bound up with that of the other parties that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit when these parties cannot be subjected to its jurisdiction."

The court also quotes with approval the language of the court in Shields v. Barrow, 17 How. 130, 15 L. Ed. 158, where, speaking of this third class, the court said:

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience."

The authorities upon this point are quite numerous. See Ribon v. Railroad Co., 16 Wall. 450, 21 L. Ed. 367; Williams v. Bankhead, 19 Wall. 571, 22 L. Ed. 184; Kendig v. Dean, 97 U. S. 425, 24 L. Ed. 1061; Hicklin v. Marco, 6 C. C. A. 10, 56 Fed. 549, 553.

The question then arises whether or not the suit can be tried, heard, and determined without the presence of Seaman. He has no interest whatever in the suit. Mason, who sublet the contract to Ban and Seaman, knew that Seaman's interest was conditional upon profits being received. Ban was to do the work, receive and disburse the money, and, if there were any profits, Seaman was to have one-half thereof. There are no profits. Why, then, is it necessary to make Seaman a party complainant herein, when the only effect his presence would have would be to defeat the jurisdiction of the court? It affirmatively appears from the averments in the amended bill that none of the parties to the suit could possibly be injuriously or prejudicially affected by having the suit maintained by Ban, who is the real party in interest, as complainant herein. The whole subject-matter of the suit could be determined without Seaman being brought in, and settled with justice to all parties concerned without detriment or prejudice to either.

Complainant had the right to allege the facts showing the relations which Seaman had with the subject-matter of the suit, that he had no interest therein, and was not an indispensable party thereto. If brought in, he would only be a nominal party. The jurisdiction of the court can be maintained upon the general principles announced in Holmes v. Goldsmith, 147 U. S. 150, 161, 13 Sup. Ct. 288, 37 L. Ed.

118, where the suit was based upon a note executed by M. B. Holmes, John Dillard, and R. Phipps, citizens of Oregon, payable to the order of W. F. Owens, a citizen of Oregon, and by him indorsed to L. Goldsmith and Max Goldsmith, citizens of the state of New York. Suit was brought in the United States circuit court in the district of Oregon by the Goldsmiths against Holmes, Dillard, and Phipps; it being averred in the petition that the defendants executed the note for the accommodation of Owens to enable him to procure a loan thereon; that Owens was in fact the maker of the note, and never had any cause of action thereon against the defendants. The court held that upon the question of jurisdiction it was permissible to show by parol testimony what relation the parties really held to the contract sought to be enforced; that the spirit and purpose of the restrictive clause in the statute were to prevent the making of assignments of choses in action for the purpose of giving jurisdiction to the federal court, where such jurisdiction would not exist as between the original parties to the contract; and finally, after quoting many decisions, the court said:

"We think that the jurisdiction of the circuit court in the case before us was properly put by the court below upon the proposition that the true meaning of the restriction in question was not disturbed by permitting the plaintiffs to show that, notwithstanding the terms of the note, the payee was really a maker or original promisor, and did not, by his indorsement, assign or transfer any right of action held by him against the accommodation makers."

See, also, Equity Rule 47; Payne v. Hook, 7 Wall. 425, 431, 19 L. Ed. 260; Wachusett Nat. Bank v. Sioux City Stove Works (C. C.) 56 Fed. 321; Insurance Co. v. Svendsen (C. C.) 74 Fed. 346, 348; Smith v. Lee (C. C.) 77 Fed. 779; Sioux City Terminal R. & Warehouse Co. v. Trust Co. of North America, 27 C. C. A. 73, 82 Fed. 124.

In Baxter v. Hart, 104 Cal. 344, 345, 37 Pac. 941, the action was brought to recover $391.39 for services performed by plaintiff in threshing wheat and barley for defendant. The testimony tended to show that plaintiff Baxter and one Flanigan owned a threshing machine and were engaged as partners in threshing grain for farmers. Flanigan and defendant were also partners in the crop of grain threshed. Flanigan arranged with defendant for the threshing, and each of them was to pay separately for one-half of the threshing. But Baxter and Flanigan then agreed that they would not thresh the crop as copartners, but that the pay coming from defendant should all go to plaintiff, and that Flanigan's grain should be threshed for him free to offset the other half. It did not appear that this arrangement between plaintiffs was known to defendant until after the grain was threshed. Upon these facts the court said:

"The only question in the case is, does the testimony support the finding that defendant is indebted to plaintiff in the sum of $391.93 for the threshing of defendant's crop of wheat and barley, etc.? No reason is perceived why plaintiff and Flanigan could not, as between themselves, although copartners, agree that, as to a given venture or contract, plaintiff should have the entire benefit, as they might have assigned the demand arising therefrom one to the other after completion of such venture or contract. Had defendant presented a counterclaim against the firm held by him before notice of this arrangement, it would have been valid to defeat the claim; but, in

the absence of such a cross-demand, it is not perceived that he can be injured by a judgment for that which he was bound to pay. The case, then, stands thus: Plaintiff and Flanigan, entered into a contract jointly with defendant, and then by an agreement between themselves stipulated that plaintiff should be the recipient of the entire benefit thereof. This constituted him the real party in interest as between himself and his copartner, and as a result he was the proper and only proper party plaintiff."

Ban and Seaman were not copartners in the full sense of that term. A partner must ordinarily bear the burden of the losses, as well as share in the profits. The authorities cited by appellees, as to the obligations of parties jointly interested or as copartners, have no controlling effect when applied, or sought to be applied, to the particular facts of this case.

2. Did the court below err in holding that the mechanic's lien law of 1885 was repealed by implication by the lien law of 1889? This is not free from difficulty. Much can be said, and has been ably said, on both sides of the controversy. The act of 1889 contains provisions with reference to the enforcement of the liens under it which are radically different from the procedure under the act of 1885. The suit is brought under the provisions of the act of 1885. If the act of 1889 is given controlling effect, complainant is "out of court" upon his own statement of facts, or lack of statement of material facts. He must stand or fall upon the provisions of the act of 1885. The title of the act of 1885 is, "An act for securing liens for mechanics, laborers, materialmen, and others and prescribing the manner of their enforcement." Laws 1885, p. 13. The title of the act of 1889 is, "To protect contractors, subcontractors, and laborers in their claims against railroad companies or corporations, contractors, or subcontractors." Laws 1889, p. 75. The act of 1885 provides:

"Sec. 3. A lien created by this act upon any parcel of land shall be preferred to any lien, mortgage, or other incumbrance which may have attached to said land subsequent to the time when the building or other improvement was commenced."

Complainant asks for a priority of his lien over that of the New York Trust Company, defendant herein. The act of 1889 provides:

"Section 1. That no such lien shall take priority over existing lien."

The act of 1885 provides:

"Sec. 10. No payment by the owner of the building or structure to any original or subcontractor, made before thirty days from the completion of the building, shall be valid for the purpose of defeating or discharging any lien created by this act in favor of any workman, laborer, lumber merchant or materialman, unless such payment so made by the owner of the building or structure to such original or subcontractor has been distributed among such workmen, laborers, lumber merchants or materialmen, or, if distributed in part only, then the same shall be valid only to the extent the same has been so distributed."

This enables a lien claimant under certain conditions to collect the whole amount from the owner regardless of what has been paid by it. The act of 1889 contains a proviso (section 1) that:

"The aggregate of all liens hereby authorized shall not in any case exceed the price agreed upon in the original contract to be paid by such corporation to the original contractor, nor shall such corporation be liable for any greater

sum than the amount then actually due by such corporation to said original contractor."

The complaint in this case is silent upon the question whether there is anything due from the railway company to Hammond or to Mason. There are other differences in the acts that need not be specially noticed. The closing section of the act of 1889 says:

"Inasmuch as there is now no law upon this subject, and it is of importance to laborers and materialmen, this act shall take effect from and after its approval by the governor."

What did the legislature mean when it said "there is now no law upon this subject"? It is the contention of appellees that the act of 1885 does not authorize any mechanic's lien on railroads, and that section 7 of the act of 1889 is a legislative declaration that there was no law in Oregon providing for any liens on railroads, and that, if the act of 1885 "might by any possibility be construed to provide for a lien on railways," then it is conclusive evidence of the legislative intention that the act of 1889 should operate as a repeal of the act of 1885. In 2 Jones, Liens, § 1624, the author says:

"Under the general terms 'structure,' 'erection,' or 'improvement,' it is, of course, possible to establish a lien for almost anything that can be attached to the realty. * * * Under such a statute, a lien has been established against a railroad for ties furnished the company (Neilson v. Railroad Co., 44 Iowa, 71), and doubtless a lien might be established for almost any part of a railroad, such, for instance, as the grading of the line of road as an 'improvement' upon land."

In the consideration of the questions herein involved we must naturally look, at least in the first instance, to the decisions of the supreme court of Oregon, if there are any, touching the construction of the statutes of that state, for they would be binding upon this court.

In Forbes v. Electric Co., 19 Or. 61, 23 Pac. 670, 20 Am. St. Rep. 793, which was a suit to enforce a number of liens for labor under a contract which one Stronach had with the corporation to dig holes and place the poles therein, and stretch the necessary wires on the same, from the city of Portland to a point near Oregon City. The said wires were to be used by the defendant corporation for the purpose of transmitting light and power from the company's works at the falls of the Willamette river to the city of Portland and for other electrical purposes. The plaintiff rested his claim to enforce his lien on the fact that Stronach had a contract with the defendant corporation to do the work which they performed, and that he employed each of said parties at a fixed rate of wages per day to assist in its performance. The court said:

"The plaintiff's right to the remedy which he seeks must depend on the statute. * * * The principal question litigated on this appeal is whether or not this statute gives a lien for labor against the property described in the complaint; in other words, do these poles, planted in the ground, connected together by wires and insulators, constitute a structure within the true intent and meaning of this statute? In answering this question, but little aid can be had from the decisions of other states, for the reason that no general principle of law is involved, and such decisions have generally turned upon the special or peculiar phraseology of the particular statute. Without attempting to indulge in any refined distinctions or definitions, and having in view the object and purpose of the enactment in question, I think.,

ıt may properly be held that the poles, wires, insulators, etc., mentioned in the complaint, constitute a structure within the meaning of the statute, and that the same is subject to a lien for labor performed thereon."

It is true that this case is not identical with the case in hand. The lien given is not upon a railroad; but from the principles stated by the court it necessarily follows that if the posts and wireways, therein referred to, are "structures," within the meaning of that word as used in the statute, a railroad would also be included.

In Giant Powder Co. v. Oregon Pac. R. Co. (C. C.) 42 Fed. 470, 8 L. R. A. 700, the direct question was presented to Judge Deady, and he held that the words "any other structure," as found in the act of 1885, did apply to railroads. His opinion is instructive, and covers several other points directly applicable to the present case. He declared that the act of 1889 was a most extraordinary one, and pointed out the fact that by its provisions the lien of the materialman or laborer is declared to exist against all the property of the railroad corporation, "real, personal, and mixed," without any limit as to situation or place of existence on furnishing of materials for the performance of labor without any record being made of the same, or notice to any one of the claim, except in the case of a laborer, when notice is required to be given to the corporation that he will hold its property for his "pay." That case, like this, was presented upon demurrer, and there, as here, it was contended by counsel for the demurrer that the passage of Act 1889, § 7, amounts to a legislative declaration that the act of 1885 did not include or apply to railroads. In the course of his opinion Judge Deady said:

"The subsequent act might have been passed out of abundance of caution, and not upon any well-grounded or serious impression that the former was wanting or insufficient in this respect. Be this as it may, the opinion of the legislative assembly of 1889 as to the scope and purpose of the act of 1885 is of very little moment, and can have no weight in the construction of the later one concerning rights and transactions which were vested or transpired before its existence. The intention of the legislature of 1889 in passing the act of that year is a proper subject of judicial inquiry and determination; but its opinion of the scope and effect of the act of 1885, if it had any, is not material in this case. Considering the peculiar provisions of the act of 1889, the most obvious reason for its passage is that the legislature thereby intended to take the subject of claims against railway corporations for materials and labor furnished out of the operation of the general lien law of 1885 and put it under this special act, which does not require any notice of the claim to be filed with any clerk or other officer, and provides a special proceeding in which all such claims must be enforced as in one suit. It must be admitted that, if the legislature intended to include railways in the act of 1885, it is not apparent why so important a subject was not mentioned in the long list of those expressly named. Still the language of the act is certainly broad and comprehensive enough to include a railway. It is certainly a 'structure,' if not a 'superstructure.' A lien can as conveniently be imposed upon it as upon a 'ditch,' 'flume,' or 'tunnel.' These instances of lienable property are expressly mentioned in the statute; and the scope and operation of this general term, 'structure,' immediately following this specific enumeration, must be ascertained by reference to the latter. The doctrine of 'noscitur a sociis' applies; and the significance of the word 'structure,' in this statute, is indicated by the company it is found in,—'ditch,' 'flume,' and 'tunnel.' If the language of the act was 'building or other structure' only, then it might not be construed as including railway. But the words, a 'ditch or any other structure,'

cannot, consistently with this established rule of construction, be held to exclude a railway. A railway is literally and technically a 'structure.' It consists of the bed or foundation, which may be of earth, stone, or trestle work, on which are laid the ties and rails. These, taken together, constitute a 'structure,' in the full sense of the word,—a something joined together, built, constructed."

He then refers to the opinion of the supreme court in Forbes v. Electric Co., supra, and adds:

"A railway is certainly a structure within the authority of this decision. The railway and the wireway, notwithstanding the different uses to which they are subject, are both structures, upon which a lien may be had as security for the labor and materials that entered into their composition."

We think the decision in the supreme court of Oregon, above quoted, in principle, at least, is decisive upon the question under consideration, and, supplemented as it is by the opinion of Judge Deady, will be treated as conclusive. In connection with these decisions we call especial attention to Pennsylvania Steel Co. v. J. E. Potts Salt & Lumber Co., 11 C. C. A. 11, 63 Fed. 11, 14, where the court held that no lien attached upon a railroad under the language of the lien law of Michigan. It is very instructive, and may be examined with profit, as to the necessity of courts in their respective states being governed by the language of the statute giving a lien. The views therein expressed are unquestionably sound, and are certainly as favorable to appellant as to the appellees herein.

Returning to the main question whether the statute of 1885 is repealed by the act of 1889, we find certain well-settled canons of interpretation applicable to this question that should not be overlooked: (1) The law does not favor repeals by implication. (2) The legislative intent should, when ascertained, be given controlling effect. (3) When there is a difference in the whole purview of two statutes relating to the same subject, the former is not repealed. (4) Statutes which are not inconsistent with one another and which relate to the same subject-matter are in pari materia and must be construed together, effect being given to all, though they contain no reference to one another and were passed at different times. (5) That two statutes on the same subject shall stand together, and both be given effect, if practicable or possible. (6) A statute ought never to be held to repeal by implication another previous statute on the same subject, unless the terms of the two statutes are so repugnant that they cannot be reconciled or stand together.

In Wood v. U. S., 16 Pet. 342, 362, 10 L. Ed. 987, the court, having under consideration the question whether the sixty-sixth section of the act of 1799 (1 Stat. 677), had been repealed or remains in full force, said:

"That it has not been expressly or by direct terms repealed is admitted; and the question resolves itself into the more narrow inquiry whether it has been repealed by necessary implication. We say by necessary implication; for it is not sufficient to establish that subsequent laws cover some, or even all, of the cases provided for by it; for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only pro tanto, to the extent of the repugnancy."

In Chicago, M. & St. P. R. Co. v. U. S., 127 U. S. 406, 408, 8 Sup. Ct. 1194, 32 L. Ed. 180, it was contended that there was no statute in force which authorized deductions from compensation claimed by railroads during a certain period, and in replying thereto the court said:

"There is a brief and conclusive answer to this contention. Section 3962 of the Revised Statutes is not repealed by section 5 of the act of 1879. 20 Stat. 358. Section 3962 authorizes a deduction from the pay of contractors, whether they be natural persons or corporations, of the price of the trip in all cases where the trip is not performed, and not exceeding three times the price if the failure be caused by the fault of the contractor or carrier. Section 5 of the act of 1879 applies only to railroad companies, and has special reference to failures of delivery within schedule time, and makes a difference between them and failures to make the trips, leaving the provision for the latter substantially as it is in the Revised Statutes. When there are two acts or provisions of law relating to the same subject, effect is to be given to both, if that be practicable. If the two are repugnant, the later will operate as a repeal of the former to the extent of the repugnancy. But the second act will not operate as such repeal merely because it may repeat some of the provisions of the first one, and omit others, or add new provisions. In such cases the later act will operate as a repeal only where it plainly appears that it was intended as a substitute for the first act. As Mr. Justice Story says, it 'may be merely affirmative, or cumulative, or auxiliary.'"

In Winters v. George, 21 Or. 251, 257, 27 Pac. 1041, the court held that the act of the legislature providing for the consolidation of the cities of Portland and Albina did not repeal and was not in conflict with the Muessdorffer act, which provided for the maintenance by those cities of bridges across the Willamette river, and in the course of its opinion said:

"It is elementary law that repeals by implication are not favored. It is a reasonable presumption that the legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention. Hence it is said to be a rule, founded in reason as well as in abundant authority, that in order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and the earlier law, so positive as to be irreconcilable by any fair, strict, or liberal construction which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law, and construing both together in harmony with the whole course of legislation on the subject."

In Raudebaugh v. Shelley, 6 Ohio St. 316, the court said:

"The maxim, 'Leges posteriores priores contrarias abrogant,' does not apply except where the inconsistency or repugnancy is such that the two provisions cannot stand as cumulative or concurrent rules of action, so that the later statute by its necessary operation abrogates the former. Repeals by implication are not favored, especially under our present constitution; and it is a well-settled rule of construction, applicable to all remedial laws, that where a new remedy or mode of proceeding is authorized, without an express repeal of a former one relating to the same matter, it is to be regarded as merely cumulative, creating a concurrent remedy, and not as abrogating the former mode of procedure."

117 F.—3

See, also, McLaughlin v. Hoover, 1 Or. 31, 33; Bower v. Holladay, 18 Or. 491, 496, 22 Pac. 553; Mount v. Mitchell, 31 N. Y. 356, 360; Goddard v. City of Boston, 20 Pick. 407, 410; Harford v. U. S., 8 Cranch, 45, 3 L. Ed. 504; Ex parte Yerger, 8 Wall. 85, 105, 19 L. Ed. 332; State v. Stoll, 17 Wall. 425, 431, 21 L. Ed. 650.

These cases sufficiently illustrate the general principles we have announced. In the present case it will be observed by a careful reading of section 1 of the act of 1885, set out at length in the statement of facts, that it only applies to persons performing labor upon or furnishing material "to be used in the construction, alteration or repair" of the building, ditch, flume, or other structure. This is the sole object and purview of the whole section. Then, turning to section 1 of the act of 1889, it will be discovered, upon careful inspection, that it has a different object in view. It first gives to persons who, as subcontractors, materialmen, or laborers, furnish to any contractor or to any railroad corporation "any fuel, ties, material, supplies, or article or thing," and then provides that any laborer, for any work or labor performed for such contractor, shall also have a lien upon "all property, real, personal and mixed, of said railroad corporation." Is it not evident from a comparison of these acts that it was the intent of the legislature of 1889 to give a lien to persons who were not included in the provisions of the act of 1885? We think it was. Such a conclusion gives sense and meaning to section 7 of the act, wherein the legislature said, "as there is now no law upon the subject." No repeal was necessary. There was no intention on the part of the legislature of 1889 to repeal by implication or otherwise the act of 1885. Any other view would convict the legislature of an absurdity. The fact of the different methods of procedure contained in the two acts also furnish evidence in support of this view; for it might be, within the wisdom of the legislature, that it thought such differences would be just and proper to fairly meet the justice of the case; and it certainly was not unreasonable for the legislature to make different provisions as to the character of the lien which the supply men and laborers were given under the act of 1889 from those specified in the act of 1885 with reference to the subcontractors and others "having charge of the construction, alteration or repair of a railroad." This makes both acts perfect in themselves and amounts to a complete system which different persons might enforce under the law, which gives them a lien, whether it be the general act of 1885 or the special act of 1889.

In Robinson v. Rippey, 111 Ind. 112, 12 N. E. 141, the court had under consideration the question whether the gravel road law of March 3, 1877, was repealed by implication by the act of April 8, 1885. The court, in the course of its opinion, said:

"There are very material differences in the provisions of the two acts. In many respects they are inconsistent, while in others they are substantially the same. Each act, taken in itself, constitutes a complete scheme or system for the construction of gravel roads and for the method of procedure in making and collecting assessments. The question presented is a very perplexing one, but, after the most careful study we have been able to give it, we have reached the conclusion that it was the intention of the legislature to create two systems, and not to repeal the former law. The fact that both

of the statutes are directed to the attainment of the same end does not warrant the conclusion that the later repeals the former. Statutes constructing two systems for the government of the same subject may both stand. Beals v. Hale, 4 How. 37, 11 L. Ed. 865; Wood v. U. S., 16 Pet. 342, 363, 10 L. Ed. 987; Daviess v. Fairbairn, 3 How. 636, 11 L. Ed. 760; Raudebaugh v. Shelley, 6 Ohio St. 307. Mr. Bishop thus states the rule: 'Two or more separate laws may establish the same right, or provide redress for the same wrong; and the person seeking to enforce the right or avenge the wrong may proceed on the law he chooses.' Bish. Written Laws, § 163d. In the legislation upon the subject of drainage we have an example of the creation of two distinct schemes for the attainment of the same end, and these statutes have been sustained and enforced. * * * There is, therefore, no intrinsic difficulty in maintaining the theory that two systems were created by the legislature, and the fact that the statutes relate to the same subject and seek the same end does not necessarily require it to be held that the later supersedes the earlier. It does not follow that, because two statutes contain similar provisions, the earlier is abrogated; for,· if the intention to construct two systems is manifested, the similarity in the provisions of the two statutes will not supply a valid reason for declaring the earlier to be repealed by implication. The principle which controls this phase of the question was decided in Powers v. Shepard, 48 N. Y. 540. * * * It was there held that 'the re-enactment of certain of the sections of one act in a subsequent one providing for a different scheme is not a repeal by implication of those sections in the first act.' * * * It may, perhaps, be true that confusion will result from framing two systems for the government of one subject, and that it is an unwise exercise of power; but the wisdom or expediency of a statute is a question for the legislature, and not for the court. Eastman v. State, 109 Ind. 278, 10 N. E. 97, 58 Am. Rep. 400. The courts can do no more than determine the validity of the statute, and, having adjudged it valid, ascertain and enforce the legislative intention. They cannot, as Judge Cooley says, 'run a race of expediency with the legislature.' Nor will mere inconvenience, worked by the similarity of two statutes, justify the courts in declaring that the earlier is impliedly repealed by the later. Waldo v. Bell, 13 La. Ann. 329; Mitchell v. Duncan, 7 Fla. 13; Raudebaugh v. Shelley, supra; State v. Berry, 12 Iowa, 58; Wilson v. Shorick, 21 Iowa, 332. The addition to an existing system does not necessarily imply its abrogation."

3. Can a lien be secured upon an extended line of railroad upon which the work was done without including the entire railroad owned by the defendant corporation? In a certain sense it may be said that there is endless confusion upon this subject. Some of the authorities are diametrically opposed to others. Many of the cases are based upon the particular language of the state statutes; some upon the grounds of public policy supposed to exist in certain states against giving a lien upon different sections of a railroad, that the railroad is an entirety, and that there can be no severance or dislocation of the road as a unit. There is a direct conflict upon the main question involved herein. In Missouri it has been expressly held that under the provisions of the statutes of that state a lien for labor and materials cannot be enforced against that portion or section of a railroad only for which they were furnished. To be enforceable the lien must be against the whole railroad situated in that state. Knapp v. Railway Co., 74 Mo. 374, 378; Id., 6 Mo. App. 205. In 2 Jones, Liens, § 1619, it is said:

"Where a part only of a railroad lies within the state under the laws of which the lien is enforced, the lien cannot, of course, be enforced against that part of the road not within the state; but it must be enforced against the whole of that part within the state, and not against a section or portion of it only."

The only authorities cited in support of this text are from Missouri. We are not aware of any general public policy existing in Oregon which forbids the enforcement of a lien given by the statute of that state against the property of a railroad or other corporation. If a railroad company gives a mortgage upon certain portions of its road, it can be enforced by law in a foreclosure suit without embracing the whole road, subject, of course, to the general principles that in such foreclosure suits the property mortgaged cannot, for obvious reasons, be sold in separate parcels or portions and made subject to the right of redemption as given by the statutes of the state where the property is situated. We are of opinion that these general principles apply with equal force to mechanics' and other liens given by the statute of the state wherein the property is situated. We know of no sensible reason why any different principle should be applied in one case and not applied in the other. True it is that the mortgage is given by the free and voluntary act of the corporation, while the lien of a subcontractor or laborer is filed by virtue of the statute; but this distinction does not, in our opinion, demand the application of any different principle.

Conceding, for the purposes of this opinion, that the lien claimant might have filed his lien against the whole railroad as a unit, it does not necessarily follow that he must enforce his lien against that portion only upon which he performed his work. Can the corporation complain because he took his lien upon less than he was entitled to? If so, upon what grounds? In several of the states the statute gives a lien on buildings and so much land around the same as may be convenient or necessary for its use or occupation. Others provide for a specified quantity of land. Suppose the lien claimant only filed his lien on the building and the ground upon which it stood; would the lien claimant lose the right to enforce his lien because he did not include all the land to which he was entitled under the law? He could not, of course, take his lien on the roof of the house, nor of the parlor or kitchen. These could not be separated from the main building. Such comparisons, made for the purpose of showing that the lien cannot be taken except on the whole road, beg the real question at issue. It will be time enough to consider illustrations of this character when a lien claimant seeks to enforce his lien upon detached sections of that portion of the road upon which the work was done. We must not lose sight of the facts of this case. The defendant corporation had completed its railroad from Biggs to Moro. This part of the road was completed and in full operation prior to the time when the contracts were entered into for the extension of the road from Moro to Shaniko. Appellees contend that the lien should have been upon the whole railroad owned by the defendant from Biggs to Shaniko. There is no segregation of any part of the road on which the work was done. That portion is not divided into sections. The lien in this case is upon the whole railroad to which it applies.

Brooks v. Railroad Co., 101 U. S. 443, 25 L. Ed. 1057, cited by appellees, is not in opposition to the views above expressed. There it was held that where a contractor performs labor and furnishes

material upon a section or division of a railroad in Iowa then in the process of construction, and there was a pre-existing and duly recorded mortgage executed by the company upon its entire line of road to secure its bonds, the lienholder, on filing his claim within the time and in the mode prescribed by the statute, has, as against the mortgagees, a paramount lien upon the entire road. The assignments of error were that the court erred in decreeing a lien on the property in Davis, Van Buren, and Lee counties, the first division of the road, for work done in Appanoose county, the next division, on a contract which was dated and work begun after recording the mortgage in the latter county. The court said:

"As we understand this objection, it is founded on the idea that while, if the whole road had been uninterruptedly built under one contract, the lien of the contractors and subcontractors would have been good against the whole road, though they had contributed only to the building of a limited portion of it, yet because these subcontractors were only employed on one division of the road, after another had been finished, and under a distinct contract with the company made after that completion, the lien can only attach to the last section of the road, and even this is subordinate to the mortgage of the appellants. One branch of the question here raised was very fully considered in the case of Neilson v. Railway Co., 44 Iowa, 71. That was a case where, after the building of a railroad had been commenced, a mortgage was executed on its whole line, both where work had been done and where none had been done. After this the building of the road was continued under new contracts by persons who did work on the other parts of the road, and the question was whether they had any lien prior to that of the mortgage, and, if so, whether it extended to all the road, or only to that part built under the new contracts. The court, after mature deliberation, decided both these questions in favor of the contractors."

The most that can be claimed for this case is that it holds that a lien could be claimed for the whole road. It does not intimate that it could not be claimed only for the portion upon which the lien claimants performed the work; nor does this case destroy the force of the opinion in Canal Co. v. Gordon, 6 Wall. 561, 18 L. Ed. 894, in favor of the views contended for by appellant. It says:

"In that case, as was said in the opinion, we had no aid from any decision of the courts of the state. In the one before us we have several decisions of the Iowa court. * * * If Canal Co. v. Gordon, supra, is at variance with the decisions of the courts of Iowa construing her own statutes, we must follow the latter."

Judge Deady, in Giant Powder Co. v. Oregon Pac. R. Co., discusses the question herein involved at some length. Among other things, he said:

"It is easy to say a thing is against public policy, but that does not make it so. Public policy is manifested by public acts, legislative and judicial, and not private opinion, however eminent. I have no knowledge of any such public policy prevailing in this state. A railway is nothing but private property devoted to public use, the same as a warehouse, and is so far, and no further, the subject of public policy. The owner, be he a natural person or a private corporation, can disuse or dispose of it, in whole or in part, at his or its pleasure. * * * But there is a public policy of this state, as shown by its legislation, that should be considered in this connection, which is that persons who furnish labor or materials to be used in the construction of railways shall have a lien thereon as a security for the value of such labor and materials. To promote this policy, and to produce the practical results intended by the legislature, the statute giving this lien should be

construed as far as in reason and right it may, and all mere doubts as to the extent and manner of its application should be so resolved."

In Purtell v. Bolt Co., 74 Wis. 132, 135, 42 N. W. 265, the court, after citing many of the Wisconsin cases, said:

"But there is no public policy prevailing in this state against enforcing a laborer's lien upon any bridge or other structure of a railroad company for work performed thereon, no matter whether such structure is or is not part and parcel of the railway, or to what extent the enforcement of a lien thereon may interfere with or impede the operation of the railway or the exercise by the company of its corporate franchises. On the contrary, the public policy of this state is to enforce such a lien, and the company operates its railway and uses its franchises subject to the obligation to pay the claim of the lienor as established by the judgment. All this was settled by this court in Hill v. Railroad Co., 11 Wis. 214, and the rules there established were not abrogated or shaken by the judgment in Wilkinson v. Hoffman, 61 Wis. 637, 21 N. W. 816, and have not been disturbed by any other adjudication of this court."

In Railway Co. v. Wilcox, 122 Ind. 84, 94, 23 N. E. 506, it was contended that the lien claimant could only claim his lien upon that portion of the road which was confined to one county, but the court held that "the lien fastens upon an entire and continuous line of unfinished road, and may be enforced in any of the counties through which the road runs." The opinion, like the one in hand, is quite lengthy, and its reasoning is based on the statute of that state which gives "a lien upon a railroad not in operation, and in doing this makes explicit what was before clearly implied." In that case the railroad was completed from Anderson to Noblesville, and no further, so that there was an uncompleted part extending from Noblesville to the line of Hamilton county, and on that part the lien fastened. In the course of the opinion, the court, among many other things, said:

"The purpose of the statute is evident, and that purpose is to give laborers, contractors, and materialmen a lien upon the railroad which their labor constructs and for which their property is used. The legislature, it is manifest, did not intend to confine the lien to a line of road within a single county, and we cannot so construe the statute. * * * It is our duty to give effect to the intention of the legislature, and this we do by adjudging that a lien fastens upon an entire and continuous line of unfinished road, and may be enforced in any one of the counties through which the road runs. * * * Where a corporation, having a line of railroad in operation to a town or city within a county, contracts for the construction of a part of the road leading from such town or city to a point beyond the county limits, the contractors may acquire a lien upon the part which they construct, or aid in constructing, although a portion of it lies within the county in which a part of the road is completed and in operation."

If the rule of public policy prevents a lien being filed, except on the whole road, finished as well as the unfinished portions thereof, then the statute which gives a lien on the uncompleted portion on which the work was done, upon the reasoning of some of the cases relied upon by appellees, would be unconstitutional because against public policy. No act authorized by the constitution can be said to be against the public policy of the state. State v. Preble, 18 Nev. 251, 2 Pac. 754.

In Creer v. Canal Co., 38 Pac. 653, the supreme court of Idaho held that a party constructing a branch or section of a main canal, or performing labor thereon in its construction, under a contract with the owner, is entitled to a lien upon such branch or section for any balance due him for such labor. In the course of the opinion the court said:

"The appellants claim that, if the plaintiffs had asked a lien upon the whole system of canals, they might have obtained it; complaining that the plaintiffs did not ask of the court all they were entitled to, and therefore they should not have a lien upon any part of the canal. The appellants demand that the case should be reversed because the plaintiffs did not claim all they should have. The appellants can hardly be heard in such a complaint. * * * All the work for which plaintiffs claim this lien was done on these branches, and under a contract to construct these branches, which does not mention the main canal. This had been theretofore constructed. We think this lien can be obtained on this part of the system."

In Canal Co. v. Gordon, supra, it was urged that the decree of the lower court was erroneous, because the lien given by it extended the entire length of the canal, instead of limiting it to the upper section, where all the work was done. The court said:

"Is this objection well taken? Liens of this kind were unknown in the common law and equity jurisprudence both of England and of this country. They were clearly defined and regulated in the civil law. Domat, Civil Law, §§ 1742, 1744. Where they exist in this country they are the creatures of local legislation. They are governed in everything by the statutes under which they arise. These statutes vary widely in different states. Hence we have found no adjudication in any other state which throws any light upon the question before us, and there has been none in California. We are therefore compelled to meet the case as one of the first impression. We have already shown that the upper and lower sections were distinct works in several essential particulars, to which we need not again advert. The lower one having been finished and in use before the upper one was contracted for, if those having a lien upon the former had insisted that it became extended over the latter as soon as the latter was completed, no legal mind, we apprehend, could have doubted that the claim could not be sustained. If it could, Gordon's lien might have been rendered valueless. We think the converse of this proposition applies with equal force. If a lien upon the lower section could not have been extended over the upper one, upon what principle can it be maintained that Gordon's lien embraced the lower section? A lateral feeder, constructed and intersecting the main line after it was completed, would certainly not be subject to a previous lien upon the main line, if such a lien existed. We can see no substantial difference between that case and the one before us. The upper section was only an additional feeder. That it was an elongation of the main line, and not a lateral work, does not affect the principle involved. The controlling circumstances and the object in both cases would be the same. * * * The work of Gordon was all done upon the upper section. He had nothing to do with the lower section. So far as he was concerned, and for all the purposes of this litigation, they were distinct and independent works. A different principle would produce confusion and lead to serious evils."

We have given this case unusual care, thought, and attention. In the examination and discussion of the several points many diverse views have been encountered. The authorities in many instances have been allowed "to speak for themselves." It has been the aim of the court to accept those which were deemed to be founded upon solid ground and based upon the better reason. The result of all our investigations leads us to the conclusion that the court erred in

sustaining the demurrer to the amended bill of complaint and entering judgment of dismissal thereon.

The judgment appealed from is reversed, with costs, and the cause remanded. The court below will fix a reasonable time within which defendants may plead or answer.