Argued June 28, decided July 11, 1911.

## GIANT POWDER CO. v. OREGON WESTERN RY. CO.

[117 Pac. 279.]

(See, also, 54 Or. 325 : 101 Pac. 209.)

RAILROADS—MECHANICS' LIENS—STATUTES—REPEAL.

1. Section 7429, L. O. L., providing that one who shall, as subcontractor, materialman, or laborer, furnish to any contractor to any railroad, any fuel, ties, materials, or other article, or who shall perform any work for such contractor, shall have a lien on the property of the railroad on compliance with the provisions of the act, was intended to secure only to laborers, and others furnishing labor and supplies, means of enforcing payment out of money due the contractor, and does not replace and repeal Section 7416, L. O. L., giving to mechanics, laborers, and materialmen liens for work or materials furnished in the construction of any building or any structure.

RAILROADS—MECHANIC'S LIEN — MATERIALS FURNISHED TO RAILROAD CONTRACTOR.

2. Section 7416, L. O. L., giving to mechanics, laborers, and material-men liens for work or material furnished in the construction of any building, bridge, ditch, flume, tunnel, fence, machinery, or superstructure, gives a lien on railroads in favor of one who furnishes material therefor.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is a suit by the Giant Powder Company, Consolidated, against the Oregon Western Railway Company, a corporation, and the C. E. Loss Company, a corporation. The facts are as follows:

At the commencement of this suit, defendant, Oregon Western Railway Company, an Oregon corporation, was engaged in the construction of a railroad from the town of Drain, Oregon, westerly to Winchester Bay, in Douglas County, a distance of about 50 miles. The C. E. Loss Company, an incorporated construction company of California, had a contract with the railroad company for the construction of its road. Between August 10, 1906, and January 10, 1907, plaintiff sold explosives to the Loss Company, which were used in the construction work, at the agreed price of $6,864.04, which has not been paid. On March 13, 1907, being within 30 days after the completion of the grading, construction, and erection of the road, and within 10 days after the Loss Company ceased work thereon, plaintiff filed with the county clerk of Douglas County a notice of lien upon the railroad company's grade and right of way, under the general lien law (Section 7416, L. O. L.). The form and contents of the notice are not questioned, and plaintiff brings this suit to foreclose such lien. Demurrers to the complaint were sustained by the circuit court. Plaintiff refused to plead further, and judgment was rendered dismissing the suit. Plaintiff appeals.                      REVERSED.

For appellant there was a brief over the names of *Mr. John F. Logan* and *Mr. John C. Shillock,* with an oral argument by *Mr. Logan.*

For respondents there was a brief over the names of *Mr. William D. Fenton, Mr. Rufus A. Leiter, Messrs. Coshow & Rice,* and *Mr. Arthur C. Emmons,* with an oral argument by *Mr. Fenton.*

Opinion by MR. CHIEF JUSTICE EAKIN.

The mechanic's lien law of this State, enacted in 1885 (Section 7416, L. O. L.), gives to mechanics, laborers, and materialmen liens for work or materials furnished in the construction of "any building, wharf, bridge, ditch, flume, tunnel, fence, machinery, or aqueduct, or any structure or superstructure." On February 25, 1889, another law was enacted, section 1 of which (Section 7429, L. O. L.) provides that:

"Any and all person or persons who shall hereafter as subcontractor, materialman, or laborer furnish to any contractor to any railroad corporation any fuel, ties, materials, supplies, or other article or thing, or who shall do or perform any work or labor for such contractor in conformity with any terms of any contract, express or implied, which such contractor may have made with any such railroad corporation, shall have a lien upon all property, real, personal, and mixed, of said railroad corporation; *provided,* such subcontractor, materialman or laborer shall have complied with the provisions of this act, but the aggregate of all liens hereby authorized shall not in any case exceed the price agreed upon in the original contract to be paid by such corporation to the original contractor. Nor shall such corporation be liable for any greater sum than the amount then actually due by such corporation to said original contractor; *and provided further,* that no such lien shall take priority over existing liens."

The lien provided for in this act is to be perfected by serving upon the railroad company a notice of the nature and amount of the lien, and the person at whose request the work or supplies were furnished. In this case the lien is claimed to have been filed under the general law of 1885, and it is contended by defendant: (1) That the

act of 1885 does not authorize a lien upon the property of a railroad company; and (2) that, if originally it had that effect, the act of 1889 operates to repeal or supersede the former law.   And these are the only questions raised by the demurrers.

The act of 1889 does not, in terms, refer to the former law; but the emergency clause states:

"Inasmuch as there is now no law upon this subject, and it is of importance to laborers and materialmen, this act shall take effect from and after its approval by the Governor."

And this it is contended by the defendant is a legislative interpretation of the former law, to the effect that it does not apply to railroad constructions.

These statutes have been before the federal court for construction in two cases.  *Giant Powder Company* v. *Oregon Pac. Ry. Co.* (C. C.) 42 Fed. 470 (8 L. R. A. 700), in which Judge DEADY held that the law of 1885 gives liens upon railroads to contractors, laborers, and materialmen, for work and material furnished in their construction, and cites *Forbes* v. *Willamette Falls Electric Co.*, 19 Or. 61 (23 Pac. 670: 20 Am. St. Rep. 793), as authority for that construction.   The same questions were presented in *Ban* v. *Columbia Southern Ry. Co.*, 109 Fed. 499, before the United States Circuit Court, in which it was conceded that the law of 1885 authorized a lien upon railroads for work and materials furnished in the construction thereof, but that the act of 1889 operated to repeal, by implication, that law, so far as it related to railroads.   That case, however, was taken to the United States Circuit Court of Appeals and was there reversed. 117 Fed. 21 (54 C. C. A. 407).   The court, Judge HAWLEY writing the opinion, held, on the authority of *Giant Powder Co.* v. *Ore. Pac. Ry. Co.*, 42 Fed. 470 (8 L. R. A. 700), as well as upon the language of the statute itself, that the law of 1885 provides for liens on railroads, and

further holding that the act of 1889 does not supersede or repeal by implication the former law. Also Elliott adopts the views of these cases and says that whether the word "structure," of the law of 1885, will include railroads will depend very largely upon the context, "under the maximum *noscitur a sociis,* and the phrase 'any other structure,' has been held to include a railroad when preceded by a specific enumeration of works or property of a somewhat similar character." Elliott, R. R. (2 ed.) § 1066.

The apparent scope and purpose of the act of 1889 must be kept in mind in determining its effect upon the law of 1885. It does not have exclusive application to construction work, if indeed it is intended to include such. It makes no reference to the construction or repair of the road, and the fuel, ties, materials, and supplies for which the lien is given includes such as are used in the operation of the road. The lien is not upon the thing constructed or repaired, as in the act of 1885, but "upon all property real, personal, and mixed, of the company." The original contractor is not included among those who shall have the lien, nor is the railroad company or its property liable at all events for the debt for which the lien is given, as in the former statute, but only to the extent of its liability to the original contractor at the time notice is given to it; and no provision is made therein for filing with the county clerk a notice of the lien or otherwise giving any notice to the public or other lien claimants.

1. The text indicates that the law is intended to secure only to laborers and others furnishing the labor and supplies to the contractor the means of enforcing payment out of any money due to him. Therefore the act of 1889 does not take the place of the former law, but is for a different purpose and does not give the relief intended by the law of 1885.

This is also the opinion of Judge HAWLEY in the *Ban Case,* at page 34 of 117 Fed. (54 C. C. A. 407). A careful reading of section 1 of the act shows that the emergency clause is not an interpretion of the law of 1885, but it states the fact; there being no other law for such a lien as is here provided. Some courts have held that, because railroads are public service enterprises, therefore, general lien laws are not applicable to them. *Tod* v. *Kentucky Union Ry. Co.,* 52 Fed. 241 (3 C. C. A. 60: 18 L. R. A. 305) ; *Crawford* v. *Tilden,* 13 Ont. L. Rep. 169; Id., 7 Am. & Eng. Ann. Cas. 267. But it is nowhere suggested that the legislature may not make them subject to such liens. *Neilson* v. *Iowa Eastern Ry. Co.,* 44 Iowa 71; *Pennsylvania Steel Co.* v. *Potts Lumber Co.,* 63 Fed. 11 (11 C. C. A. 11) ; Elliott, R. R. (2 ed.) § 1067. And if the language of the statute is broad enough to include them there is no reason why it should not be so applied. This is the holding in *Dunavant* v. *Railroad,* 122 N. C. 999 (29 S. E. 837), although it had been previously held in *Buncombe County Com.* v. *Tommey,* 115 U. S. 122 (5 Sup. Ct. 626, 1186: 29 L. Ed. 305), that the North Carolina statute did not extend to railroads. In *Hill* v. *La Crosse, Etc., Co.,* 11 Wis. 214, 224, in speaking of the general lien law, it is said: "The object was to furnish a protection to those who expended their labor and materials in improving the property of others. Is there anything in public policy that requires, or should permit, railroads to be built at the expense of defeating this object? If there is, we fail to perceive it, and shall recognize no such policy till the legislature enacts it into a positive law. * * But, where a railroad company does come within both, we feel that we have no authority, and certainly have no disposition, to exempt them from its provision." In *Purtell* v. *Chicago Forge Co.,* 74 Wis. 132 (42 N. W. 265), in speaking of a lien on a bridge, it is said: "There is no public policy prevailing in this

State against enforcing a laborer's lien upon any bridge or other structure of a railroad company, for work performed thereon, no matter whether such structure is or is not part and parcel of the railway, or to what extent the enforcement of a lien thereon may interfere with or impede the operation of the railway or the exercise of the company of its corporate franchises. On the contrary, the public policy of this State is to enforce such a lien, and the company operates its railway and uses its franchises subject to the obligation to pay the claim of the lienor as established by the judgment." On this subject, see the exhaustive note and collation of authorities in *Crawford* v. *Tilden*, 13 Ont. L. Rep. 169, at page 269 of 7 Am. & Eng. Ann. Cas. Although it is important that the public service by the railroad be maintained, it is not so important that it should be done at the expense of the laborers, contractors, and materialmen, and the right to the lien in any case should be made to depend upon whether the statute is sufficiently comprehensive to include them.

2. We have no hesitation in holding that the act of 1885 was intended to give a lien upon railroads in favor of the contractor, materialmen, and laborers; and that the act of 1889 does not repeal the former law as to railroads or exempt them from the operation of it.

The decree of the lower court is reversed and remanded for further proceedings.          REVERSED.